## John Q. Beam v. Reuben Macomber; and Reuben Macomber v. John Q. Beam.

*Arbitration: Awards: Fraud: Mistake: Equity jurisprudence.* It is not competent to open an award made by judges selected by the parties themselves for any small or slight occasion; yet fraud and mistake may furnish grounds for equitable interference.

*Partners: Arbitration: Good faith: Concealment: Fraud.* In the case of an arbitration of partnership matters where each partner has kept account of his own matters, each is bound in good faith to lay before the arbitrators his whole knowledge of the facts, and any willful omission so to do is tantamount to fraud.

*Arbitration: Awards: Evidence.* It requires some strong evidence to impeach a result on which the arbitrators heard the parties and exercised their judgment, and where there was no concealment of facts; something more than a mere showing by an accountant that the statement of account presented to the arbitrators by the opposite party was in a form not according with the rules of book-keeping, where it is apparent that the statement, as made out, could not mislead if compared with other papers in the case to which it must be presumed all the parties looked for information.

*Fraud: Concealment: Confidential relations.* Intentional concealment between persons in confidential relations is legal fraud.

*Heard October 28. Decided January 5.*

Appeals in Chancery from Kalamazoo Circuit; bill and cross bill.

*Edwards & Sherwood,* for Beam.

*Severens, Boudeman & Turner,* for Macomber.

CAMPBELL, J:

The present controversy arises out of an arbitration of

partnership matters, whereby an award was made against
Beam in favor of Macomber of nine hundred and ninety-
two dollars and thirty-four cents.  The parties had been
engaged in buying and selling live stock, and upon a differ-
ence in their final accounting, they referred their matters
to A. C. Prutzman, C. F. Wheeler and E. H. Lothrop,
each depositing a note of one thousand two hundred dol-
lars, the prevailing party to receive the note of the other,
with such endorsements as should reduce it to the real bal-
ance.   The arbitrators, having found the amount of nine
hundred and ninety-two dollars and thirty-four cents to be
due Macomber from Beam, endorsed down his note to that
sum and gave it to Macomber, June 23d, 1870.  Four days
thereafter Macomber sued it in attachment against Beam.
In February, 1871, Beam filed his bill to have allowed him
a sum of one thousand two hundred dollars paid for the
firm but accidentally omitted from his statement submitted
to the arbitrators, and never acted on by them, though al-
leged to have been known to Macomber and not revealed by
him.   Various proceedings were had before answer, which
need not be referred to.   The answer, which was not sworn
to, denies the error, but avers two errors against Macomber,
which he claims to have recently discovered,—one in an
omission by Beam to charge himself with seven hundred dol-
lars, part of receipts from sales of hogs, September 23,
1869; and one of one thousand three hundred dollars, from
sales on October 20, 1869.   A cross-bill, not sworn to, sets
up the same facts, and prays a correction of the award.

Proofs were taken, and all the arbitrators were sworn on
behalf of Beam, who was also a witness.   Macomber intro-
duced no evidence, except from an accountant to prove the
proper mode of making debit and credit entries.   He was
not sworn himself.   Both bills were dismissed, and both
parties appeal.

The first question presented is, whether any case is made
for disturbing the award.

It is not competent to open an award made by judges

selected by the parties themselves for any small or slight occasion. Parties having selected them and trusted to their discretion must abide by their decision unless very good reason can be shown to the contrary. But on the other hand, the mere fact that arbitrators have acted, does not prevent courts from inquiring to ascertain whether by fraud or accident they have been prevented from making such an award as they might or would have made on a fair and full showing; and equities may exist which will render it just and proper to relieve against the defects which are found to arise from their omissions, for which the complaining party is not in fault. Fraud and mistake may furnish grounds for equitable interference.—*Bulkley v. Starr*, *2 Day, 553; Van Cortlandt v. Underhill, 17 J. R., 405; Charter v. Trevelyan, 11 Cl. & Finn., 714; Champion v. Wenham, Ambler, 245; Hutchinson v. Shepperton, 13 Q. B., 955; Boston Water Power Co. v. Gray, 6 Met., 131; In re Dare Valley Railway Co., L. R., 6 Eq., 429.*

In *Champion v. Wenham, Ambler, 245,* it was held the whole award need not be disturbed where the matter complained of can be discriminated and settled by itself. And such seems to be the good sense of the matter.

The present case being one where each of the partners kept account of his own matters, each was bound in good faith to lay before the arbitrators his whole knowledge of the facts, and any willful omission to do this would have been fraud. The failure to have all proper evidence laid before them could hardly fail to have arisen from either fraud or mistake of one or both of the parties.

The items set up by Macomber, if correctly claimed by him to have been omitted in the accounting, would have changed the balances very considerably. Their combined amount is two thousand dollars, and the allowance of either of them would have required the arbitrators to make an award against Beam beyond the face of the one thousand two hundred dollar note deposited; and the allowance of both would have about doubled the award.

33 MICH.—17.

The fact of this great excess is of itself enough to require caution in examining Macomber's claim, for it is evident the differences which the parties found in their private accounting, and which led them to arbitrate, must have been such as did not contemplate a balance of more than one thousand two hundred dollars due to either, and no attempt has been made to show any concealment of these items at that time.

Upon examining the record and proofs we find abundant evidence that the items out of which the seven hundred dollar claim arises were submitted to the arbitrators, and that they heard the parties, and upon investigation changed Beam's statement by adding to it a charge against him of a further sum than he had credited. He swears, and the other testimony bears him out in it, that the additional charge grew out of a dispute which they examined into. There is nothing to show the arbitrators had not full means of knowledge, and Beam swears positively that he credited the whole money in controversy except the sum added by them against him. It also appears from the testimony of one of the arbitrators, that while Macomber found fault afterwards with the disallowance of the one thousand three hundred dollar item, he said nothing to him about this. Under all these circumstances we think there is nothing to show any mistake or misconduct of the arbitrators, or any oversight. And as Macomber has not seen fit to give his own testimony or show his own vouchers or accounts, it must be presumed there is no ground of complaint on this score.

The one thousand three hundred dollar item was also brought before the arbitrators and passed upon, and we have no reason to suppose there was any mistake here, for it was in the minds of all the parties, and it is not probable that any one of intelligence could have passed by such a mistake as is set up in regard to it. This sum, as well as other items, appears in Beam's statement in a form not according with the rules of book-keeping, but nevertheless in such a way as to lead to no difficulty, if compared with the sales

accounts, to which it must be presumed all the parties looked for information. Beam received two thousand three hundred and eighteen dollars and twenty cents, on the 22d of October, 1869, of which he retained one thousand and eighteen dollars and twenty cents, and paid to Macomber one thousand three hundred dollars. He charged himself with the former sum and the company with the latter, and made no credit. There were no partnership books, and these charges, if they stood alone, would represent the transaction in the same way as if he had simply charged the difference between what he and Macomber received, leaving each to retain his own share of two thousand and thirty-six dollars and forty cents as divided. No injustice could be done, unless Macomber also charged himself a second time with the same amount, and was, in consequence, twice charged by the arbitrators. Such a mistake would be so obvious it could hardly escape attention. In the statement on which the arbitrators appear to have made their final figuring, the account of Macomber's dealings charges him only with such moneys as he received from his own sales, which would not include this. If this is so, and we find nothing which leads us to doubt it, then if there is any error at all, it is against Beam, for charging to the company what was chargeable to Macomber individually. In regard to these two items set forth in his cross-bill, Macomber was the complaining party on the record, and had the burden of proof. He has made no attempt to enlighten the court by his own testimony, or that of others, and has not produced the papers and vouchers which he must have had the means of producing. We have nowhere the sanction of his oath, either positively or on information and belief, as to any error against him, and there are some things which appear to indicate that the award, apart from Beam's present claim, might have been too large instead of too small. He contented himself with swearing a witness upon the proper method of entering items of debit and credit, and has not shown any thing to impeach the actual result. It certainly requires

some strong evidence to impeach a result on which the arbitrators heard the parties and exercised their judgment, and where there was no concealment of facts. The arbitrators have not discovered any error themselves, and do not admit any. Beam denies any error, and gives good reasons for denying any, and the exhibit of the arbitrators' reckoning shows none that we have discovered. Macomber made no effort to have any correction made until he filed his answer and cross-bill, eighteen months after the original bill was filed.

We think Macomber's case entirely fails, and that the award is not one which has done him injustice. It is not necessary to consider the question of estoppel urged against him from his prosecution of the Beam note, since he has not proved any defect to his prejudice.

As to the twelve hundred dollars which the bill was filed to have credited to Beam, the testimony is full, from arbitrators and witnesses, that it was never brought to the attention of any one during the arbitration. It escaped the attention both of Beam and of Mr. Cole, who drew off his account, and there is no doubt he made the payment as he claims he did. It is also evident that Macomber knew it and concealed his knowledge. He admitted as much after the award, to Mr. Wheeler and to Beam. He cannot, therefore, complain that he has been misled or damnified by Beam's silence or neglect. It was as much his duty as it was Beam's to show all that he knew of the true condition of the accounts, and intentional concealment is legal fraud between persons in such confidential relations.

Having failed to give his own explanation or to contradict Beam in any particular, we must accept the complainant's theory of the transaction, and hold that he has, without fault of his own, been deprived of a credit which he should have received. The original bill does not ask relief against the award except as to this item, and we have not any adequate means of correcting it in any other respect. Treating this as a separate item, and as a partnership debt

of which Beam was bound' to bear' one ·half, he· is entitled to a credit on his note to Macomber of six hundred dollars, and interest from December 16, 1869, to the date of the note, being in all six hundred and twenty dollars and forty-two cents, leaving the note reduced from· nine hundred and ninety-two dollars and thirty-four· cents to three hundred and seventy-one dollars and ninety-two cents.

The decree of the circuit court dismissing the cross bill must be affirmed, the decree dismissing the original bill must be reversed, and a new decree entered allowing to Beam the correction of the award by deducting such credit from the note and endorsing the note down to three hundred and seventy-one dollars and ninety-two cents as of its date, and restraining the collection of the balance, and granting costs of both courts to Beam, against Macomber.

The other Justices concurred.