THE PEOPLE EX REL. MERICA HEATH v. THE CIRCUIT JUDGE FOR KENT COUNTY.

*Circuit and Superior Courts—Transfer of Causes between Courts of Co-ordinate Jurisdiction—Act 147 of 1877.*

The circuit courts are the highest courts of original jurisdiction in Michigan.

The circuit courts of Michigan are by the constitution given "original jurisdiction in all matters, civil and criminal, not excepted in this constitution and not prohibited by law," etc. *Held*, that the Legislature cannot interfere with their constitional jurisdiction nor give municipal or local courts any power to revise or change their action, as by authorizing the removal of causes from them after the hearing is entered on.

Act 147 of 1877 in allowing the removal of causes from the circuit court of Kent county to the superior court of Grand Rapids during their pendency and after the court has entered upon the hearing, is invalid.

Where a cause has once begun to be heard in a court of general original jurisdiction, it cannot thereafter be removed to a municipal court of co-ordinate powers, as that in effect would be to subordinate the general to the local court.

A cause had been heard on its merits and a decree therein for an accounting partly executed. *Held* too late to remove it to a co-ordinate court.

MANDAMUS to compel a court to resume control of a cause after ordering it to be transferred. The facts are in the opinion. Submitted October 9. Decided October 16.

*James A. Rogers* and *Stephen H. Ballard* for the relator.

*Eben Smith* and *J. C. FitzGerald* for the respondent.

CAMPBELL, J. A suit was brought by relator in the circuit court for the county of Kent to obtain an accounting concerning partnership matters against Waters and Remington. A decree for accounting was made March 23, 1872, and the proceedings to account were begun and progressed before a circuit court commissioner. In March, 1877, an order was made for further proceedings before the commissioner then in office, who on the 26th day of April, 1876, had completed his examination and prepared to make his report, when the defendant Waters applied to open the reference and take further proofs and cross-examinations. This permission was granted in part and in part refused. Waters appealed to the circuit court, where the action of commissioner Wolcott was affirmed. He then appealed to this court and his appeal was dismissed on the 24th of April, 1877, on the ground that the order complained of was not appealable.

A report as to one of the defendants, Remington, had been made December 31, 1872, and confirmed.

On the 19th day of May, 1877, an act was passed by the Legislature amending the act organizing the Superior Court of Grand Rapids by enlarging its jurisdiction and providing, as is claimed, for the transfer of causes from the circuit court for the county of Kent at stages in which they could not before be transferred, and in a manner excluding

any control by the circuit court. Two days after the pas-
sage of this act, which was given immediate effect, on the
21st of May, 1877, a petition and bond were filed for
removal, and the circuit court thereupon made an order
refusing to proceed further. At that time a petition was
pending to have the reference removed for completion to
the new circuit court commissioner, Mr. Adams, who had
succeeded Mr. Wolcott. The case has since been referred
by the Superior Court to a commissioner to complete the
accounting.

Relator now moves for a mandamus to compel the cir-
cuit court to resume control of the cause.

The original act creating the Superior Court provided for
the transfer of any cause which might have originally been
brought there if the act had been in force upon filing cer-
tain documents, "Provided, however, that no cause pend-
ing in said circuit court, when this act takes effect, shall
be thereafter removed, under the provisions of this section,
during a trial or hearing thereof." L. 1875, p. 46–7.

The act of 1877, p. 142, provides for removing any cases
then pending at law or in equity, "Provided, however, that
no action at law pending in said circuit court when this act
takes effect, shall be thereafter removed under the provisions
of this act during a final trial thereof."

Upon a fair examination of this language we do not
think it is ambiguous. It in terms allows a transfer of
chancery causes at any time during their pendency. It is
quite likely that in this case, as in many other statutes con-
cerning judicial proceedings, the Legislature has acted with-
out fully considering the effect of the statutes adopted. We
cannot doubt the intention of the draughtsman of this extra-
ordinary enactment. The parties have brought themselves
within its terms. We are therefore to consider its validity.

In the case of The People ex rel. Jones v. The Judge of
the Kent Circuit, 35 Mich., 494, we held that the original stat-
ute (which is in some respects not so broad as the new one)
was broader than it could lawfully be made, and that no
legislation was valid which in any way subordinated the cir-

cuit courts to the superior court; that the superior court was and must be no more than a municipal court, and could have no jurisdiction which did not come within the scope of municipal judicial action.

The circuit courts are the highest courts of general original jurisdiction in the state, and they are given by the constitution itself "original jurisdiction in all matters civil and criminal, not excepted in this constitution, and not prohibited by law; and appellate jurisdiction from all inferior courts and tribunals and a supervisory control of the same." Any legislation concerning municipal courts which interferes with the constitutional jurisdiction of the circuit courts, or which allows the local court to revise or change the action of the general court is very clearly illegal. If the municipal court is not inferior to the circuits it cannot be made superior. If it is made a court of co-ordinate powers, it is made so on the principle that for the purposes of that jurisdiction the city is regarded as a separate district of territory having to a certain extent its own court as it would have if no connection existed with the county for judicial purposes. The constitution does not permit any such actual severance of territory except in a qualified sense. It does not contemplate any greater authority than that severance would create without trenching upon the necessary powers of the circuit.

Municipal courts have existed from time immemorial, and their functions are not unkown. The courts of London have always had jurisdiction both civil and criminal,—legal and equitable; and cases arising in the highest of those courts were reviewable before a special commission of errors composed of justices appointed by the king and sitting at the church of S. Martin Le Grand, from whose decision error lay to the house of lords. Fitz N. B., 22, 23; 3 Bl. Com., 80-81, and notes.

The jurisdiction was concurrent in most respects with that of the royal courts, and since the modern changes of procedure the judgments have been made reviewable in the Exchequer Chamber or in the superior court of appeals, and not in the lower courts of appeal or the Queen's Bench.

*Le Blanch v. Reuter's Telegram Co.*, L. R. 1 Ex. Div., 408. But the jurisdiction is and always has been rigidly confined to causes arising within the jurisdiction or persons subject to it. The recent change of courts in England has brought those matters for the first time within the usual series of law reports, and it is manifest that while the municipal tribunals have authority over controversies of the same dignity as others they cannot go outside to reach them. See *Taylor v. Jones*, L. R. 1 C. P. D., 87; *Taylor v. Nicholls*, Id., 242; *London Joint Stock Bank v. Mayor of London*, Id., 1; *Ellis v. Fleming*, Id., 237; *Hawes v. Paveley*, Id., 418; *Washer v. Elliott*, Id., 169; *Bridge v. Branch*, Id., 633.

The controversy in the cause before us, being one where all the parties and all the subject matter are within the city of Grand Rapids, the case, if now commenced, would on these principles be subject to disposal by the Superior Court. But when this law took effect there had been a hearing on the merits and a decree for accounting partly carried into execution, nothing being left for future inquiry but the pecuniary balance and the consequent determination of the final measure of relief.

To remove a case after there has been action upon the questions involved on its merits by the circuit court, involves, if it be lawful, a power in the Superior Court to do thereafter whatever the circuit court could have done had there been no removal. This would give to the Superior Court what is practically an appellate power of reviewing and reconsidering what has already been decided at the circuit. This we think is not allowable. So long as the circuit court has not entered upon the hearing of the cause it cannot be said to have involved any judicial action. But as soon as a court enters upon a hearing and the case is *sub judice*, we think it cannot thereafter at any stage be snatched from the custody of the tribunal hearing it without the exercise of a power which could subject it to appeal.

The analogy of the United States statutes for the removal of causes from state courts to courts of the United States does not apply. The authority to remove is asserted by

the United States Supreme Court to rest on a plenary power in congress to provide for such cases as the constitution allows to be cognizable in the national courts. It is not easy to justify it on any other theory, and there is certainly no power in our legislature to give municipal courts supremacy over others.

The framers of the statute under consideration have acted upon the theory that there is no limit to legislative power in this regard, and the act is a remarkable one. We are not called upon to deal with it beyond the case before us. We think the transfer of the chancery suit to the Superior Court was unlawful, and that the case is still in the circuit where it must be proceeded with. The mandamus is allowed.

COOLEY, C. J., and GRAVES, J., concurred.

MARSTON, J., did not sit in this case.