## PETER V. WYCKOFF AND JOHN M. LABERTEAUX. v. THE VICTOR SEWING MACHINE COMPANY.

*Injunction—Contract given in escrow—Laches—Equitable relief.*

Injunction will lie to restrain an action on a contract delivered in violation of an agreement to hold it in escrow until certain changes in it had been made.

Laches alone is not necessarily conclusive against a complainant's equities when he is not of a suspicious nature nor prompt to assert his rights.

Equity gives, in case of fraud, a concurrent remedy to that which may be had at law.

Where the objection to an equitable remedy is one that must be passed upon at the final hearing, after all the evidence is in, it is not to be favored.

Appeal from Calhoun. Submitted April 7. Decided April 21.

INJUNCTION. Bill to enjoin the prosecution of a suit at law upon a contract of agency made with a sewing machine company, and to avoid the contract and the bond given to secure its enforcement. Relief was given, and defendant appeals.

*William H. Porter* for complainants.

*James H. Campbell* for defendant.

COOLEY, J. If it be true, as complainants allege, that at the time Wyckoff signed the agreement of April 1, 1874, whereby he became agent for the sale of machines for defendant, it was agreed between him and Martin by whom the agreement was made on behalf of the company, that the latter should hold the agreement in escrow and not deliver it until a supplemental agreement modifying the third article was entered into, then the complainant should have the relief prayed for. The third article was the one which bore particularly hard upon agents, especially in periods when business was dull and depressed as was then the case; for it made the agents personally responsible to pay for all machines which had been on hand four months and remained unsold; and an agent who was to keep on hand six machines, as the principal agreement provided, ought to be very confident of making satisfactory sales before putting himself under such a responsibility.

Martin denies in the most positive terms that the principal agreement was to be held in escrow at all, or that there was any understanding that the third article was to be modified; and there are some circumstances in the subsequent course of action of Wyckoff that furnish support for his denial. Nevertheless we think the weight of evidence is with the complainants. Wyckoff and his son both testify to the understanding alleged, and these two were the only persons besides Martin who had positive knowledge on the subject. Their testimony may fairly be said to be entitled to a credit equal to

his, notwithstanding their greater interest in the controversy.

But we attach considerable importance to the testimony of Harrington, who had previously been agent for defendant in the same district. Harrington was consulted by Martin about the new appointment, and seems to have conversed with him very freely. Harrington's agreement with the company was such an one as complainant says he was to have, the agent being liable to pay for the machines only as fast as he made sales. If Harrington is to be believed, he was not given to understand that the arrangement with Wyckoff was to be any different, and the inference from the conversation was it was to be the same. But it is a fact of some significance that Harrington advised Martin that Wyckoff had not the qualities which fitted him to be a successful sewing machine agent,—that, to use the words of the witness, "he wasn't much of a sewing machine man." Harrington knew then, what the evidence in the case discloses, that Wyckoff lacked the push and shrewdness for such business, and so informed Martin. It is a little remarkable that under such circumstances Wyckoff should have been accepted as a suitable agent to advance in that district the interests of complainant by means of sales; and the circumstances give support to the charge that Martin was willing to entrap a simple-minded man into a position where the sewing machine company would be able to force upon him a purchase of machines which he understood were entrusted to him merely to sell. It clearly appears that it was a difficult time for any one to make sales, and that machines of equal value to those of defendant were then being sold at lower prices; and it is scarcely credible that Martin then expected that Wyckoff would be able to build up a business in competition with others more shrewd and energetic. It may be that he meant to deal with Wyckoff openly, frankly and fairly, but the evidence supports the charge of underhanded and deceptive conduct.

Had Wyckoff at once repudiated the arrangement when the modifying agreement was not sent on, there would probably have been no serious question made upon the facts. He delayed doing this, however, until some countenance was afforded to the claim of defendant that he had waived his right to take advantage of the fraud. *De Armand v. Phillips* Walk. Ch. 186. But the qualities which Martin was advised of by Harrington will sufficiently explain this. Wyckoff was not a suspicious man, nor a man who moved promptly in the assertion of his rights; in other words, if Martin intended a trick, he was the sort of a man who would be selected as the victim. We do not think the laches in this case are conclusive against complainant's equities.

It is objected that complainant had ample remedy at law; and this is probably true. There has nevertheless always been a concurrent remedy in equity in cases of fraud; *Wheeler v. Clinton Canal Bank* Har. Ch. 449; *Edsell v. Briggs* 20 Mich. 433; and as equity in this case could require the surrender of the agreement and the machines on just terms, its remedies would be more complete and ample than any which a court of law could afford. And where the objection to the equitable remedy must be passed upon at the final hearing, after all the evidence is in, it is not one to be favored.

It results from these views, that the decree must be affirmed with costs.

The other Justices concurred.