## MARTHA M. TOMPKINS v. HARVEY J. HOLLISTER, AND THE FIRST NATIONAL BANK OF GRAND RAPIDS.

(SEE 60 MICH. 485.)

*Equity practice—Amending bill admits validity of plea—Amended bill stands in place of new one, and supersedes plea to original bill—If defendant demurs to amended bill, the case stands as if no plea had been filed—Equity jurisdiction—Concealment by person holding fiduciary relations to another, of important facts for his benefit, a fraud—Defrauded party entitled to equitable relief—Existence of adequate legal remedy, immaterial—Equity has concurrent jurisdiction in such a case—Statute of limitations—Does not apply to such a case until discovery of fraud—Injured party has two years in which to file bill—Mistake of law—Standing alone does not usually entitle to equitable relief—Yet in such a case as stated will so entitle—Suppression of the truth as prejudicial as assertion of a falsehood—When coupled with intent to defraud, courts will grant relief.*

1. By amending a bill of complaint to which a plea has been filed, the validity of the plea is admitted; but such amended bill stands in the place of a new one, and the plea is no answer to it, being superseded by the amended bill, to which the defendant has the same time to plead, answer, or demur as to the original bill. If the defendant choose to demur to such amended bill, the case stands as if no plea had ever been filed.

2. Where a person holding confidential and fiduciary relations to another, and thereby morally and legally bound to communicate facts, conceals them for his own benefit, and to the disadvantage of the other, he is guilty of a fraud entitling the defrauded party to relief in equity; and it makes no difference that an *adequate* remedy exists at law, for equity has *concurrent* jurisdiction in such a case.

3. The statute of limitations does not apply to a cause of action fraudulently concealed from the injured party, who may file his bill at any

time within two years after the discovery of his rights and the deceit practiced upon him.

4. While it is true that mistakes of law, when standing alone, cannot usually furnish a ground for equitable relief, yet, where one has the *right* to and *does rely* upon another, who omits to state a most material legal consideration within his knowledge and affecting the other's rights, but of which the other is ignorant, and *acts* under this misplaced confidence and is misled by it, a court of equity will afford relief, especially if such action inures to the advantage of the person whose advice is taken, even though no fraud was intended.

5. A fraud arising from the suppression of the truth is as prejudicial as that which springs from the assertion of a falsehood; and courts will not hesitate to sustain recoveries where the truth has been suppressed with intent to defraud.

Appeal from Superior Court of Grand Rapids. (Parrish, J.) Argued January 7, 1886. Decided April 15, 1886.

Bill for accounting, etc. Defendants appeal from decree overruling demurrer. Affirmed. The facts are stated in the opinion. (See 60 Mich. 485.)

*Martha M. Tompkins*, in pro. per.:

"The jurisdiction exercised by courts of equity over the dealings of persons standing in certain fiduciary relations has always been regarded as one of a most salutary description. * * , * The courts have always been careful not to fetter this useful jurisdiction by defining the exact limits of its exercise. Whenever two persons stand in such a relation that, while it continues, confidence is necessarily reposed by one, and the influence which naturally grows out of that confidence is possessed by the other, and this confidence is abused, or the influence is exerted to obtain an advantage at the expense of the confiding party, the person so availing himself of his position will not be permitted to retain the advantage. * * * It is settled by an overwhelming weight of authority that the principle extends to every possible case in which a fiduciary relation exists as *a fact*, in which there is confidence reposed on one side, and the resulting superiority and influence on the other. The relation and duties involved in it need not be legal; it may be moral, social, domestic, or merely personal": Pomeroy's Eq. Juris. § 956.

The principle which encourages confidence protects it by

preventing any profit to be gained from abusing it: *Witbeck v. Witbeck*, 25 Mich. 442; *Moore v. Mandlebaum*, 8 Mich. 433; *Beam v. Macomber*, 33 Mich. 127; *Robins v. Hope*, 57 Cal. 493; and equity will not deny relief to one *least* in fault, against one who has *led her* into the act by a violation of confidence: *Barnes v. Brown*, 32 Mich. 146.

Equity has general jurisdiction in cases of fraud (*Match v. Hunt*, 38 Mich. 2; *Merrill v. Allen*, 38 Mich. 487; *Wright v. Hake*, 38 Mich. 525; *Sexey v. Adkinson*, 34 Cal. 350), and concurrent with that at law: *Wheeler v. Clinton C. Bank*, Har. Ch. 449; *Wyckoff v. Victor S. M. Co.*, 43 Mich. 309.

To fix the character (of fraud), the evidence need not be specific. The conclusion may be drawn from incidents: *Hale v. Chandler*, 3 Mich. 531; *Tong v. Marvin*, 15 Mich. 60; *Adair v. Cummin*, 48 Mich. 380-382.

If any person shall fraudulently conceal the cause of such action, * * the action may be commenced within two years after * * he shall discover that he has such cause: How. Stat. § 8724.

The receiving of money which, consistently with conscience, cannot be retained, is in equity sufficient to raise a trust in favor of the party for whom or on whose account it was received: 2 Story's Eq. Jur. § 1255; and equity impresses a constructive trust when obtained through misrepresentations, concealments, or undue influence: *Huxley v. Rice*, 40 Mich. 73; Pomeroy's Eq. Jur. § 1053; and the true owner may always, by means of an equitable suit, compel the trustee to convey or assign the trust property. * *· Plaintiff is also entitled to any auxiliary remedy—such as injunction, cancellation, and an accounting—which may be necessary to render his final relief efficient: Id. § 1058.

A court of equity has jurisdiction in those cases in which an adequate remedy does not exist in the probate court: *People v. Wayne Circuit Court*, 11 Mich. 393.

A court is governed by the case actually made by the bill. Granting of the equitable remedy is a matter of judicial discretion, to be exercised upon a consideration of all the circumstances of each particular case: *Geney v. Maynard*, 44 Mich. 578; *Wallace v. Harris*, 32 Mich. 380.

A general demurrer will not lie if any relief whatever is warranted by the bill: *Hawkins v. Clermont*, 15 Mich. 511; *Cochrane v. Adams*, 50 Mich. 16.

*Gleason & Bundy* and *L. W. Wolcott*, for defendants:

Equity will not entertain jurisdiction of the case made by

the bill, for the reason that, if entitled to relief, the remedy at law is complete and adequate ; the relief sought is in no sense equitable. The prayer is, that the bank be compelled to make "restitution and repayment" of what it may have received from complainant. *The bill asks damages in money in an action on the case*, and nothing more.

Courts of equity will not entertain jurisdiction to grant such relief, or decide upon the facts or measure of damages in such a case. Such cases belong peculiarly to courts of law, and a right to trial there cannot be taken away by planting a cause on the chancery side of the court: *Bay City Bridge Co. v. Van Etten*, 36 Mich. 210; *Hagenbuch v. Howard*, 34 Mich. 1; *Mears v. Howarth*, 34 Mich. 19; *Raymond v. Shawboose*, 34 Mich. 142; *Bennett v. Nichols*, 12 Mich. 22; *Teft v. Stewart*, 31 Mich. 367; *Bradley v. Bosley*, 1 Barb. Ch. 125; *Shepard v. Sanford*, 3 Barb. Ch. 127; *Bonebright v. Pease*, 3 Mich. 318.

While it never has been claimed that this bill was one of *discovery* (were such bills permissible), yet complainant has urged that her prayer for, and right to, a discovery were enough to save the jurisdiction of equity. We reply :

*a* The bill waives answer under oath, and no ground of relief can be set up that rests merely on the necessity of a discovery: *Torrent v. Rodgers*, 39 Mich. 85; *Teft v. Stewart*, 31 Mich. 367; *Wales v. Newbould*, 9 Mich. 87.

*b* The suit is one for relief, and not for discovery. A demurrer that is good to the relief is good to the discovery also: *Welles v. River Raisin and Grand River R. R. Co.*, Walker's Ch. 35.

*c* There is no necessity for a discovery apparent in the bill. It makes no difference *how* complainant paid the money, *if* she paid it. She alleges that she did. Nor does it matter to which one of defendants she paid it, as she seeks to recover it from the bank only. If it was not paid to the bank, it is a matter of defense at *law* on the part of the bank. Nor yet is it important what the note was originally given for (on any theory), so long as it was not her obligation. She says it was not.

*d* The bill does not show that there is no living witness of the transactions, besides defendants, who could testify to them: Jennison's Ch. Pr. 378, and cases cited ; but, on the other hand, she shows that all the facts regarding the giving and payment of the note are within her personal knowledge.

The complainant's more plausible claim to equity recognition is, that the case she states is one of "fraud," and that

"equity has jurisdiction in all cases of 'fraud'"; this is a frequent and a specious claim to the recognition of equity courts on the part of those who, for some reason best known to themselves, seek to avoid an examination at law into the facts of a particular case. But the point we have made throughout this long litigation, and now insist upon, is, that by the bill in this case no equitable relief whatever is asked; the action is one for damages only: *Teft v. Stewart,* 31 Mich. 371; *Bradley v. Bosley,* 1 Barb. Ch. 125; *Shepard v. Sanford,* 3 Id. 131; *Russell v. Clark's Exr's,* 7 Cran. 69; and for a full discussion of the present American doctrine upon this subject, see Pomeroy's Eq. Jur. §§ 178–9, and cases cited.

The general prayer for relief will not give jurisdiction where a bill fails to otherwise make a case for specific relief, and is demurred to on the ground that there is a remedy at law: *Flanders v. Chamberlain,* 24 Mich. 305.

No relief is sought by the bill against the statute of limitations. The complainant has argued that equity will sustain her bill and its claim, against the statute, because of fraudulent concealment of her cause of action. Without discussing the merits of her allegations upon that point, we say that, were her bill in such form as to permit the point to be raised, the statutes have provided fully for saving every case at law that stands on like allegations: How. Stat. § 8724. If complainant should have sought her remedy, when she first made her pretended discovery of a cause of action, in a court of law, a court of chancery will not now allow her to escape the consequences of her own fault in not doing so: *Blanchard v. Williamson,* 70 Ill. 647.

If we were to grant that the obligation evidenced by the note was not one that the complainant should have paid, that it was in no sense her debt, and that she could not have been compelled to pay it, the most that can be said is that she paid the money under a mistake of law. No recovery can be had: *Marriot v. Hampton,* 2 Smith's Lead. Cas. 458; *Hall v. Shultz,* 4 Johns. 240, and note, p. 249; *Lapp v. Lapp,* 43 Mich. 287; *Clancy v. McEnery,* 17 Wis. 177.

MORSE, J. The complainant, who is the widow of Byron D. Ball, filed her bill of complaint against the defendants, alleging, in substance, as her grievance, that while her husband was on his death-bed, January 8, 1876, and supposed to

be dying at the time, the defendant Hollister, who had been on the most intimate business and friendly terms with her husband, came to the house with a lawyer, a partner of her husband, and procured from him a note for $4,000; that they called her into the room where her husband lay, who in great excitement said to her, "Mattie, sign this note we are making," which she did, not comprehending what she was about,—only thinking of her dying husband. The note was as follows:

"$4,000.          GRAND RAPIDS, MICH., January 8, 1876.
"Four months after date we jointly and severally promise to pay to the order of Harvey J. Hollister four thousand dollars, at the First National Bank of Grand Rapids, value received, with interest at ten per cent. per annum after maturity.                    BYRON D. BALL.
                         "MARTHA M. BALL."

Complainant avers that she did not then know, and does not now know, what the consideration of said note was, but that it was not given for any debt or obligation of her own.

Upon the death of her husband, a few weeks thereafter, she and said Hollister became and acted as joint executors of his estate; that having the utmost faith and confidence in said Hollister, she trusted everything to him, and knew but little as to what was done in regard to settling Ball's estate; that said Byron D. Ball left four children. There was an insurance policy on his life for her benefit for the sum of $4,800, and another for the benefit of the children amounting to $2,500, the proceeds of both being paid to her about the middle of May, 1876. Hollister informed her that she would be held personally liable for this note, and that it was her debt; that Hollister had the management of these insurance moneys, which she deposited in said bank; and by his order, May 20 or 22 of that year, she paid said note out of her insurance money, being then $4,010.83 in principal and interest; that she so paid it relying upon the superior business knowledge of Hollister, and believing she was liable thereon. She does not know which of said defendants got this money, but thinks the most of it went to Hol-

lister.   At the time of payment she said to him, as she had
said before:   "If I could have my way, it should be used
for the payment of that mortgage," referring to a mortgage
of $13,000 upon premises of her husband's estate, known as
"Ball's Block," in the city of Grand Rapids.

There was a large amount of debts against her husband's
estate, amounting in all to $9,193.85, all of which have been
duly paid and settled, save one to herself, which will be
noted hereafter.   The estate was inventoried at $54,100, of
which only $800 was personal.   The claim proved in her
name against the estate was for the amount paid on this note,
principally, being $4,285.54, which was presented and
allowed without her knowledge.   This claim so allowed has
never been paid to her, and there is no money or personal
property out of which to make it; that said Hollister used
both her and the children's insurance moneys to pay said
note and other debts of the estate ; and all that she has ever
had out of these funds so deposited in said bank, and after-
wards managed and controlled by said Hollister, is the sum of
$800.   Said Hollister neglected to make payment of any of
the debts against the estate out of the real estate.   In 1883
she took hold of the matter herself, and, by selling the only
lot outside of the block, succeeded in paying said debts, save
her own, by compromising and discounting most of them at
fifty cents on the dollar.   The only property now belonging
to the estate is this Ball's block, which is mortgaged for over
$20,000.   The property was appraised by the supervisor for
taxation last spring at $29,000.   The real cash value is not
stated.

She further avers that Hollister knew she was not legally
bound upon said note, and was not obliged to use said insur-
ance moneys to pay the same, and wrongfully and deceit-
fully neglected and refused to inform her of her rights,
which he was in duty bound to do ; that he, and said bank of
which he was cashier, wrongfully, unlawfully, and fraudu-
lently secured from her the payment of said note, and after
the payment further kept her in ignorance of her rights by

fraudulently neglecting to inform her that she was not liable and holden upon said note.

She further alleges that not until the summer of 1883, when she employed counsel and began acting under other advice than said Hollister's, did she first fully learn, comprehend, and know that she could not have been legally required to pay said note, because the obligation therein set forth was not her debt, and that she had been wrongfully misled and deceived by said Hollister.

She shows that she has requested said Hollister and said bank to account for and repay the said moneys so had and detained by him or it, but said defendants utterly refuse and neglect so to do.

She prays that said defendants may answer and give the full history, basis, and origin of said note, and its payment, and come to a fair accounting with her in that regard, and be required to make restitution of such moneys to her; and that she may have such other and further relief in the premises as the nature of her case shall require.

To this bill the defendant corporation demurred, and Hollister filed a plea, setting up in the same that the said complainant, on the fifteenth day of July, 1884, exhibited a bill of complaint against him in the same court, setting forth the same identical cause of action as in the present proceeding against him, but not joining the corporation defendant therein; that he appeared and answered in said cause, in which answer he fully gave the basis and origin of said note, and denied all fraudulent action or doing as charged in said bill; that said complainant filed her replication to said answer, but afterwards, at her own request, the same was withdrawn from the files of the cause; that said cause came on to be heard before said court on March 3 and 4, 1885, and was heard and fully argued on the merits; that March 8, 1885, the court pronounced a decree in favor of said defendant Hollister.

It seems that up to this time the complainant in the present suit was acting in her own proper person, without any solicitor. After the filing of said plea she asked and was granted leave to amend her bill of complaint, the court also

making an order that she "appear thereafter by counsel through some regularly admitted attorney of this bar."

On the twenty-second day of July, 1885, she filed, through her solicitors, Tatem & Jamison, an amended bill of complaint, such amended bill differing only from the first by inserting the following paragraph, speaking of said Hollister:

"That while he himself was well informed of her rights in this behalf, yet he wrongfully and deceitfully neglected and refused to inform her of her rights in this regard, as in duty bound to do; that thereby, and in manner and on occasions aforesaid, while being and acting as her trusted co-executor, and at the same time being and acting as the cashier of the bank, the said defendant Hollister, in collusion with said bank, as complainant believes, wrongfully, unlawfully, and fraudulently secured from her the execution and payment of said note, and the keeping of her said moneys thereafter; that he thus secured such payment, if not in his own individual interest, in the interest of the said bank, a corporation wherein he was a large stockholder, as well as director and officer."

—and in amending the prayer for relief so that said Hollister and said bank might be required to give a full account of the payment of said note, and the manner of its payment, and come to a fair and just account of their doings in that regard; and that said bank might be required to make repayment and restitution to her, with interest, of all sums of money paid by her to it upon said note; and that said Hollister might be constituted and held as surety for such repayment and restitution, and for the payment of such other damages to her as should be agreeable to equity: to which amended bill both of the defendants filed a general demurrer for want of equity. The demurrer, upon argument, was overruled. The defendants now appeal to this Court.

It is claimed that by amending her bill the complainant admitted the validity of the plea filed by defendant Hollister, which is true; but the amended bill standing in the place of a new bill, the plea is no answer to it. The plea was superseded by the new or amended bill, to which the defendants had the same time to plead, demur, or answer. Instead of putting in a plea, defendants chose to demur, and the case

now stands, therefore, as if no plea had ever been filed: *Peck v. Burgess*, Walk. Ch. 485.

It is also urged that she makes no case for equitable relief by her bill as amended, and the demurrer should have been sustained because (1) her remedy at law is complete and ample, and (2) the bill upon its face shows that the claim against defendants is barred by the statute of limitations.

It appears very clearly from this bill that the note in question was one that she was not legally liable upon: that she did not know this fact until 1883; that Hollister did know it, and neglected to inform her of it; that he was her co-executor of her husband's estate; and that she had such implicit faith and confidence in him as to trust nearly all the business to him, and to accept unhesitatingly his guidance and control in all the financial matters pertaining to her husband's business and her own, until some time in the summer of 1883.

It seems to me that the whole controversy here hangs upon the question whether the relation that the defendant Hollister in this transaction bore to the complainant was of such a fiduciary, or *quasi*-fiduciary, character that he was bound by that relation to inform complainant of her rights in the premises. If it was his duty to inform her that she was not personally liable upon this note and he neglected to do so, especially for his own benefit or that of his bank, he committed a fraud upon her which entitles her to relief.

And it makes no difference that she may have an adequate remedy at law. Equity has concurrent jurisdiction in cases of fraud, and she can enforce her rights in this suit: *Wheeler v. Clinton Canal Bank*, Har. Ch. 456; *Wright v. Hake*, 38 Mich. 532; *Wyckoff v. Victor S. M. Co.*, 43 Mich. 309; Adams Eq. § 176; Will. Eq. Jur. 145.

And especially does equity take cognizance of a case where one holding confidential and fiduciary relations to another, and thereby morally and legally bound to communicate facts, conceals them for his own benefit and profit, and to the disadvantage of the other: Adams Eq. (4th Amer. Ed.) mar. paging, 176, and cases cited; *Miller v. Welles*, 23 Conn. 21.

The statute of limitations does not apply in this State against a cause of action fraudulently concealed, before the fraud is discovered. The complainant filed her bill within two years from her discovery of her rights as to this note and the deceit practiced upon her in reference thereto. She has thereby, if the fraud has been committed and concealed as claimed, saved her action within the statute : How. Stat. §§ 8724, 8726.

But it is said that she seeks relief against her want of knowledge of the law ; that the fraud, if any, consisted, not in concealing from her the existence of any fact, but in not informing her of the law, which she was presumed to know as well as the defendants ; and that the rules which apply to a concealment of matters of fact do not apply to matters of law.

It is true, as stated by Justice CAMPBELL in *Lapp v. Lapp*, 43 Mich. 288, that mistakes of law cannot usually be a ground of relief, when standing alone. The current of authority runs in that direction most strongly, although in some states even such relief has been granted.

But it is also true that there are cases of fraudulent misrepresentations or concealments of matters of law by those holding confidential relations to the person wronged thereby which equity will relieve against. Where one relies upon another, and has a right to so rely, and the person relied upon omits to state a most material legal consideration within his knowledge, of which the other is ignorant, affecting his rights, and the person thus ignorant acts under this misplaced confidence and is misled by it, a court of equity will afford relief, especially if such action is to the advantage of the person whose advice is taken, even though no fraud was intended : Story Eq. Jur. (10th Ed.) §§ 133, 138*c*, 138*e*, 138*f*; *Pusey v. Desbouvrie*, 3 P. Wms. 315, 321; Will. Eq. Jur. 64; *Wheeler v. Smith*, 9 How. 55.

If it appears, under such circumstances, that the knowledge was concealed, or any misrepresentation made, with an intent to keep the party in ignorance of his rights under the law, for the express purpose of the other's benefit, such action is fraudulent, and there can be no doubt of the right of equity

to interfere and remedy the wrong : Will. Eq. Jur. 65; Story Eq. Jur. §§ 307, 323.

It is further insisted that the neglect of the defendant Hollister to acquaint the complainant of the law, although he was acting in a fiduciary capacity, is no fraud upon her, and that if it were, the statute saving cases of fraudulent concealment from the operation of the statute of limitations does not apply when the concealment is as to a right in law, but to a concealment of fact.

The statute, however, by its terms, refers to the fraudulent concealment of the *cause of action*, which would be applicable to a concealment of law as well as of fact.

The question, then, is, did the defendant Hollister occupy such a relation towards the complainant as made it his legal duty to tell her that the note was worthless and invalid as against her ?

She was a woman presumably but little versed, if any, in the law, and ignorant of the manner and methods of business life, as most married women are.

"It would not be very strange if she should be induced by an apparently friendly adviser in whom she had confidence, both as a friend and a man of business, to follow his advice implicitly without going elsewhere for counsel :" *Barnes v. Brown*, 32 Mich. 153.

The defendant was a leading business man, standing high in the community, enjoying her trust and confidence both as a friend of herself and husband, and as a man and a citizen. He knew the law of which she was ignorant. The note, and her signature thereto, was obtained by him at the bedside of her dying husband, and under great excitement of herself and husband. Hollister was trusted by the husband also, and made co-executor with his wife. It is quite probable that the husband and wife both supposed that he would faithfully and honestly administer the trust, and by his superior knowledge and business ability be of great service both to the estate and the widow and children of the deceased, who were interested in such estate. He accepted such trust. The complainant, from

the beginning, leaned upon and confided in him—so much so that the whole business management of the estate was intrusted to him. She took her money and her children's, derived from the insurance upon the life of her husband, which he had thus set apart for them, and deposited it in the bank, and allowed Hollister to control and direct it as he saw fit.

Instead of collecting this note, which was either for his benefit or that of the bank of which he was cashier, out of the estate of the husband, he made it the debt of the wife; and by telling her that it was her debt, when he knew that it was not her debt and that it could not be legally collected of her, secured and used her funds to pay it; and then put a claim in for the amount of the same against the estate in her name, and without her knowledge, when he ought to have proceeded against the estate in his own name or that of the bank, and left to her the enjoyment and disposal of her money for her own benefit.

Can any one doubt what his moral duty was? Most certainly, as an honest man, he was in duty bound to acquaint her with her rights in the premises, or at least to say to her that she better take other advice as to what she should do as to the payment of this note. He became and was her adviser; he knew that she trusted in him, that if she followed her own inclination she would not use her or her children's money to pay this note; but, knowing the law himself, and knowing that she was ignorant of it, he says to her, "It is your debt," and thereby, taking advantage of her ignorance and her confidence, obtains money that in equity and good conscience he had no right to. It was a moral and, I think, a legal fraud upon her, which equity should and will redress.

"As a matter of conscience," says Pothier, "any deviation from the most exact and scrupulous sincerity is repugnant to the good faith that ought to prevail in all transactions."

The golden rule, which commands us to love our neighbor as ourselves, will not permit us to conceal from him anything which we should be unwilling to have had concealed from ourselves under similar circumstances. This is the moral law. The common law does not go to this length,—taking

account of human imperfections; but it will take notice, at least, of a willful misrepresentation, made to obtain undue advantage over one innocent and ignorant of the law and her rights under it, who, by her misplaced confidence in the superior knowledge of another holding a confidential and trusted relation towards her, has been deceived and wronged.

A fraud arising from the suppression of the truth is as prejudicial as that which springs from the assertion of a falsehood, and courts have not hesitated to sustain recoveries where the truth has been suppressed with the intent to defraud: *Allen v. Addington*, 7 Wend. 9; *Addington v. Allen*, 11 Wend. 374; *Fleming v. Slocum*, 18 Johns. 403.

But here was something more than silence when he should have spoken,—something more than the mere suppression of the truth. When Hollister said to complainant, "This is your debt," it was a clear assertion upon his part that she was legally liable upon it; it had the force and effect of a misrepresentation, and it was one. It said to her: "I know the law; under it you are personally liable, and I shall hold you for it." It was the means of defrauding her out of over $4,000, and I can see no other conclusion, from all the circumstances, but that he intended to defraud her, and relied upon her ignorance of the law, combined with her faith and confidence in him, to accomplish his object.

If he had been her solicitor or attorney, her guardian, her copartner, her physician, her father or brother, there would have been no doubt but his relation to her would have been such that his controlling influence over her will, conduct, and interests would have taken away from this payment the character of a voluntary one, and stamped it as obtained by such fraud or undue influence as to entitle her to the relief asked in her bill (Will. Eq. Jur. 170, 194; Story Eq. Jur. §§ 218, 307, 345; *Beam v. Macomber*, 33 Mich. 132); and it seems to me that the relationship shown between the parties—their being co-executors, and she, the weaker, confiding in, and being controlled by him as completely and unreservedly as if he had been her attorney, father, or brother—brings this case within the authorities, and under the beneficent rule established by them: Pom. Eq. Jur. § 956.

And the legal presumption that all must be presumed to know the law, in the face of this fraud, cannot preclude the complainant from maintaining her suit to right it, or to have, at least, a fair and just accounting and history of defendants' actions and doings as to her funds, when the fact does appear, in spite of the legal presumption, that she was ignorant of the law, of which ignorance undue advantage has been taken.

Mistakes of law will sometimes be relieved against; and that eminent jurist, Story, says:

" We think it creditable to the courts and to the profession that, with all the zeal which has been sometimes manifested to make the rule excluding relief in courts of equity, in every case of pure mistake of law, absolute and inflexible, the sense of justice has steadily withstood the refinements of logic on the one hand, and the blind love of formal symmetry upon the other."

Yet this is a case having, with the mere mistake of law, the further elements of such misrepresentation and fraud, and abuse of misplaced confidence, as to enlist at once, in aid of the injured person, the justifiable interference and operation of equitable jurisdiction.

This decision is based upon the bill of complaint, which, upon demurrer, must be taken as true.

It may be that upon answer, or upon hearing upon proofs, the case may present another color; but we consider the complainant, as the case stands here, entitled to some answer or explanation as to the conduct of defendants.[1]

The order of the court below overruling the demurrer of defendants is affirmed, with costs, with leave to answer within twenty days after the remanding of the cause to the superior court of Grand Rapids, in chancery.

CAMPBELL, C. J. and SHERWOOD, J. concurred. CHAMP-LIN, J. did not sit in this case.

---

[1] After the filing of the above opinion defendants answered, and proofs were taken, and a decree made in favor of complainant. From this decree defendants appealed, and on October 13, 1887, an opinion was filed reversing the decree and dismissing the bill; the report of which follows this case.—REPORTER.