LYON *v.* DADA.

WILLS—UNDUE INFLUENCE.

> The representation to a testatrix by her brother, who was a
> lawyer and the draftsman of her will, that the residuary
> clause in a former will, giving the property to her brothers in
> trust, was objectionable, because it threw a question upon the
> validity of the will, and that it would be better to leave the
> trust part out, and his concealment of the fact that the clause
> might be so drawn as to accomplish her purpose, with know-
> ledge that she relied on him, constitute such undue influence
> as will avoid the will, which gave the residue to the brothers
> absolutely.

Error to Berrien; Coolidge, J. Submitted November
11, 1896. Decided December 24, 1896.

William R. Lyon, as executor, presented for probate
the will of Laura E. Dada, deceased. From an order
probating the will, Percy A. Dada, an infant, by his
guardian, Warner M. Baldwin, appealed to the circuit
court. The will was there set aside, and the executor
brings error. Affirmed.

*Edward Bacon*, for appellant.

*E. L. Hamilton* and *M. L. Howell*, for appellee.

LONG, C. J. Laura E. Dada died, leaving her last
will and testament, which was executed March 1, 1890.
By this will she gave to each of her five brothers $100,
and, as stated in the will, "as a slight token of my
appreciation of their kindness to me." After the making
of some other small bequests, the will provided by the
eighth clause that—

"All the rest, residue, and remainder of my estate,
both real and personal, I give, devise, and bequeath to

my brothers, Marcus, Brainard, Newell, William Richards, and Lewis E. Lyon equally, share and share alike, to have and to hold to themselves, their heirs and assigns, forever."

Mrs. Dada had been married for several years to William B. Dada, who was living at the time of Mrs. Dada's death. They had had one child, by the name of Arthur, who lived to attain his majority, had married, and had one child, Percy A. Dada, the contestant in this case. At the time of the making of this will, Arthur had died, leaving a widow and this child him surviving. The will was admitted to probate, and the decree of the probate court was appealed from by the guardian of the infant to the circuit court, where a contest was made, resulting in the setting aside of the will by the jury. The executor of the will brings error.

Considerable contest was had on the trial below on the question of the incompetency of the testatrix, but before the close of the case that was withdrawn, and the whole case submitted to the jury by the trial court upon the question of the undue influence of William R. Lyon (who is the executor of said will), and of the fraud practiced by him upon the testatrix, by which it is claimed he procured the residuary clause to be written in the will in favor of his brothers and himself, and leaving out all provision for the husband, except a few tablespoons, knives and forks, a cake basket, and a bible, and also leaving out all provision for the grandchild, except the sum of $100, provided he lived to the age of 21 years.

William R. Lyon was a practicing attorney. Prior to the execution of the will in question, which was drawn up by him, Mrs. Dada had made and executed two other wills, in which she had by residuary clauses made her brothers trustees for certain purposes in said clauses mentioned. On the trial in the court below it was the contention of the contestant that it was the intent of the testatrix to give the residue of her property in trust for certain purposes, and not absolutely, but that, by the fraud

and undue influence of her brother William R. Lyon, the will was so drawn that he and his brothers took by its terms the residue absolutely, which amounted to the sum of nearly $2,500. This question was submitted to the jury as follows:

"If Mrs. Dada always intended to set apart by a residuary clause a certain portion of her property for charitable and humane purposes, and not to give the property so to be provided for absolutely to her brothers, then it becomes important, as bearing upon the question whether her brother William R. Lyon overpersuaded or induced her to sign the last will by artful or fraudulent suggestions against her own will and desires. If suggestions were made by Mr. Lyon at the time of making the last will, to his sister, that he doubted whether the residuary clauses in the two former wills were valid, and if at the same time he fraudulently concealed from her any method by which she might legally draw up a residuary clause providing for the control and disposition of trust funds contemplated by the former wills, and artfully and fraudulently induced her to sign a will containing a residuary clause which gave the major part of her property absolutely to her brothers, she not understanding that she could make such trust clause for humane and charitable purposes; and if you find in connection therewith that the residuary clause was not her free act and deed, but the act and deed of William R. Lyon, and that William R. Lyon then fraudulently drew up such residuary clause, and fraudulently persuaded her to sign such will,—then such will, you can find, was not the last will and testament of Mrs. Laura Dada.  *  *  *  If you find that Mr. Lyon did not fraudulently induce Mrs. Dada to sign the will, or insert a residuary clause fraudulently; that he read it to her carefully, and she fully understood it, and in no way was imposed upon, or fraudulently dealt with, and that such will was her free act and deed,—then the will was hers, and her last will and testament. If you find that Mrs. Dada wished and intended to leave a part of her property for any charitable or humane purpose, and that it should be expressed in her will, and so stated to her brother at the time of the making of the last will, then her brother should have suggested to her that he could draw up such a clause as would answer the purpose, and be valid. I do not say it was his legal duty to do it,

but I say that would be the natural duty and suggestion of a confidential adviser. But if she did not express or indicate any such wish or intent, and Mr. Lyon drew up the will just as she had intended and indicated to him, or if the will was accepted by her freely, after he drew it, as her own act and deed, without fraud or undue influence on his part, then the will was hers, and not his."

The court further charged:

"It appears in the case that Mrs. Dada, as well as her husband, had incurred a great dislike towards the mother of Percy and her family. It also appears that Mrs. Dada was desirous of keeping her property from the control and management of Percy's mother, and desirous of making a will so as to carry out her desires in this respect. Now, these facts go to show the reason why this will was drawn up as it was. If you find that Mrs. Dada preferred to have the property go to her brothers, in view of these facts, rather than to her grandchild, because she feared that the property, in case she devised it to the grandchild, would go into the control of the mother; and if you find that she made this will intelligently for these reasons, and not because she was unduly influenced or imposed upon in any way,—then you can find that this was the last will and testament of Mrs. Dada. If Mrs. Dada, for some time previous to the making of the last will, and up to that time, had a love and affection towards her grandson, and wished to devise a larger portion of her property than $100 for his benefit, and was prevented from so doing only by a belief that she could not legally make a will that would prevent her property from going to the control and benefit of the child's mother, and that this grandchild therefore would not receive any benefit from her disposition of the property as she wished to devise it, then she was laboring under a mistake of law. If, under such circumstances, she communicated to her brother William R. Lyon, her confidential adviser, the fact of her desire to devise to her grandchild, and the further fact that she believed that she could not devise her property to the benefit of her grandchild so as to keep it from the control and benefit of the mother of such child, then it became the duty of her confidential adviser, William R. Lyon, to acquaint her with her mistake, and suggest the drawing of a will that would obviate the legal difficulties presented, and yet carry out the wishes of Mrs. Dada. * * *

But if, in this case, Mr. Lyon carried out the wishes of Mrs. Dada so far as he understood them, and so far as she indicated, and it became apparent to him just what her wishes were, and he did not attempt to impose upon her, or to exert any fraudulent influence upon her, did not deceive or attempt to carry out any cunning and well-devised scheme of fraud, then there was no undue influence and no fraud perpetrated. In such case you will find that this will was the last will and testament of Mrs. Dada."

The contention of the proponent of the will is that there was no evidence showing or tending to show that William R. Lyon unduly influenced the testatrix in making the will she did, or that he perpetrated any fraud upon her to induce her to make himself and his brothers the residuary legatees in the will. We think the testimony, as gathered from the record, is abundant to show that the making of the residuary clause was brought about directly by the influence of William R. Lyon, and that he fraudulently concealed from the testatrix the fact that he could draw a will which would carry out her desires and her intent to place the property in the hands of her brothers as trustees merely. William R. Lyon himself testified in reference to the drawing of the two former wills, and also of the last will. He was asked:

"Did she tell you anything else at any time about that residuary clause?

"*A.* No, except when the last will was drawn. When the last will was drawn, I intimated to her that that clause was perhaps a little objectionable,—perhaps it would throw a question as to the validity of the will, and it would be better to leave that trust part out.

"*Q.* Give it to you absolutely?

"*A.* Yes, sir, as I drew it, and she said all right.

" *Q.* You were to dispose of the property just the same, were you?

"*A.* She didn't say anything about that.

"*Q.* Did you tell her, under the first two wills the property was held by you in trust, and you had to discharge it, and under the last will it belonged to you absolutely?

"*A.* I didn't discuss the question at all. I told her that there would be a question as to that will, leaving the clause in. It would be better to put it in as I drew it in the last will. She said all right. She understood it perfectly, and acquiesced.

"*Q.* She gives you $100 apiece for love and kindness, and then gives you the rest of it?

"*A.* The will shows.

"*Q.* She understood that she was giving it to you absolutely?

"*A.* It shows so. I have given you the conversation.

\*     \*     \*

"*Q.* Did you, in drawing these wills, inform your sister that instead of that will conveying the property to you to give to certain charities, in your discretion, it gave you the right to use it to support your own families?

"*A.* I did not.

"*Q.* Did she know it?

"*A.* We did not discuss that question at all."

We need not set out any further of his testimony. We think the charge of the court was fully sustained by the evidence. It appears that the testatrix had the most implicit confidence in the integrity of her brother, as well as in his ability as a lawyer, to guide and direct her in the disposition of her property. It is evident that she intended to make these brothers trustees under the residuary clause for certain charitable purposes, and we have no doubt that it was her intent to provide something further for her grandchild. From the affection she exhibited towards him in the last days of her life, the fact that she did not make more provision for him in her will can be accounted for only by the influence which her brother seems to have had over her, and the craft displayed by him in changing the residuary clause so as to make an absolute gift to himself and his brothers of the whole of the estate. He was bound, not only morally, but legally, to advise her that a residuary clause could be drawn which would carry into effect her wishes and desires, and not to take advantage of his relation to her as her confidential adviser, and thereby acquire to him-

self a large share of her property.  *Tompkins* v. *Hollister*, 60 Mich. 479, and cases there cited.  The questions were properly submitted to the jury under the charge of the court.

The judgment must be affirmed.

The other Justices concurred.