## MACK *v.* VILLAGE OF FRANKFORT.[1]

EQUITY JURISDICTION—FRAUD—REMEDY AT LAW.

An allegation of fraud in the issuance of municipal bonds will not entitle the purchaser to maintain a bill in equity to compel the municipality and its officers to reimburse him, where it is not shown that equity powers are necessary to the relief sought; the intervention of equity, even in cases of fraud, being justified only when the remedy at law is inadequate.

Appeal from Benzie; Aldrich, J. Submitted January 3, 1900. Decided March 27, 1900.

Bill by Christian Mack and Frederick Schmid against the village of Frankfort and others, officers of said village, to compel defendants to reimburse complainants for moneys paid for village bonds. From an order overruling demurrers to the bill, defendants appeal. Reversed.

*B. M. Thompson,* for complainants.

*George Whitbeck* and *Smurthwaite & Fowler,* for defendants.

---

[1] Rehearing denied May 18, 1900.

MOORE, J. The pleadings in this case are fairly summarized by the solicitors for the defendants as follows:

"Complainants filed their bill of complaint, alleging as follows: The defendants are the village of Frankfort, a municipal corporation, and Digby B. Butler, who was president, and six others, five of whom were trustees, in 1895, and one was village treasurer of said village when said bill was filed; and the defendants are therefore the village as a corporation, and its president, five of its trustees, and the village treasurer, as individuals. The complainants purchased three bonds, of $1,000 each, purporting to have been issued by the defendant village, and paid therefor $3,000, and said bonds purported to have been issued to enable the said village to purchase lands for a public park and improve the same. The village has refused to pay the interest coupons attached to said bonds, claiming that said bonds were never lawfully delivered. The president and members of said village conspired with each other, and with certain electors unknown, to deceive, mislead, and defraud complainants and all persons who should wish to purchase said bonds. Said bonds were not in fact issued for park purposes, but to be used as bonus bonds to promote certain business enterprises, and it was so understood by the electors of the village. The proposition to hold an election to issue park bonds was before the council of said village on January 14, 1895, when three of said trustees voted for, and three against, the proposition, and the president cast the deciding vote. An election was held accordingly on January 30, 1895, and 60 electors voted in favor of issuing the bonds, 37 electors voted against it, and 1 vote was rejected as defective.

"Prior to January 14, 1895, one Howard Seely proposed to the village council that, if the village would give him a bonus of $3,000, he would erect a factory in said village, and employ at least 50 operators, and offered to give bond for the faithful performance of his undertaking. Said proposition was accepted by the village council, four trustees voting for, one against, the acceptance; the president and one trustee being absent or not voting. After the said special election, a petition, signed by a number of the electors of the village, was presented to the council, requesting that the proposition of said Seely be accepted. Said Seely executed and filed with the village clerk a bond as per his said proposition. On February 25, 1895, the village council accepted and approved said bond, and author-

ized the closing of the contract with Seely, four trustees voting in favor of and one against the proposition; the president and one trustee being absent or not voting.   On February 27, 1895, the president and clerk were instructed to sign the contract with Seely, and to execute three bonds, of $1,000 each, four trustees voting for and two against the proposition; the president not voting.   The contract and bonds were signed accordingly, and the bonds .deposited in a vault in the Bank of Frankfort for safe-keeping until the said Seely had performed his agreement, then to be turned over to Howard Seely as per contract, and said bonds were so deposited by the president of the village, and were inclosed in an envelope upon which the said president indorsed as follows: 'Inclosed are three bonds of the village of Frankfort, for $1,000 each, to be given to Howard Seely or the Frankfort Woodenware Company as soon as their factory is completed and ready to run.   They are now placed until that time in the vault of the Bank of Frankfort for safe-keeping, in accordance with the vote of the council February 27, 1895.'   Seely erected said factory, but at what time does not appear, and on July 23, 1895, one E. R. Chandler reported that he had delivered the .bonds to the Frankfort Woodenware Company.

"Nothing appears upon the records to show that the bonds authorized by the electors of the village were the bonds given to said Seely.   The president and trustees purposely caused the records to be made up in such a manner as would conceal the actual facts, with intent to defraud complainants or whoever might purchase the bonds.   The complainants acted in good faith, and without knowledge of the actual facts.

"The bill makes the village, the president, five of the six trustees, and the village treasurer, defendants, as aforesaid, and prays relief as follows:

"(*a*) That the defendant village be decreed to be liable for the principal and interest of the bonds, and, that judgment be rendered against it for the interest now due.

"(*b*) That the village treasurer be decreed to pay such judgment.

"(*c*) If there be no funds, that the village be decreed to spread a tax to raise the same.

"(*d*) If the court shall find the village not liable, that a judgment be entered against the president and five of the trustees of the village for the $3,000 the complainants

paid for the bonds and interest thereon, and for execution to enforce the collection thereof."

The village, Mr. Butler, formerly village president, three of the trustees, and the village treasurer filed general demurrers to the bill of complaint. The other defendants did not appear. The court overruled the demurrers, and the said defendants appealed.

The grounds of demurrer are: *First*, the bill is multifarious; and, *second*, there is a plain, adequate, and complete remedy at law.

We think a disposition of the second ground of demurrer disposes of the case. It will be observed that the prayer for relief does not ask for an injunction, for discovery, for an accounting, or for specific relief, but asks simply for a money judgment. It is the claim of the complainants that the bill sets forth just one transaction,—a conspiracy to defraud,—to which all of the defendants were parties. The solicitor lays down these propositions:

1. "The English court of chancery has concurrent jurisdiction with courts of law in all cases when the cause of action is based upon fraud, although complete and adequate relief might be had at law;" citing *St. Aubyn* v. *Smart*, L. R. 5 Eq. Cas. 183, 3 Ch. App. Cas. 646; *Hill* v. *Lane*, L. R. 11 Eq. Cas. 215; 2 Pom. Eq. Jur. § 912.

2. "The jurisdiction of our circuit courts in chancery in cases of fraud is co-extensive with the jurisdiction of the English court of chancery."

It is said that this jurisdiction is expressly conferred by the Constitution and the statutes.

"The Constitution of this State (article 6, § 8) provides, 'The circuit court shall have original jurisdiction in all matters, civil and criminal, not excepted in this Constitution and not prohibited by law.'

"Section 6592, 2 How. Stat. (section 415, 1 Comp. Laws 1897), provides, 'The several circuit courts of this State shall be courts of chancery within and for their respective counties, the powers of which shall be exercised by the circuit judges thereof.'

"Section 6611 (section 433) defines the power and jurisdiction of these courts: 'The powers and jurisdiction of

the circuit courts and circuit judges in chancery, in and for their respective counties, shall be co-extensive with the powers and jurisdiction of the courts and judges in chancery in England, with the exceptions, additions, and limitations created and imposed by the Constitution and laws of this State.'"

The solicitor cites *Heath* v. *Kent Circuit Judge,* 37 Mich. 372, 375; *People* v. *McCaffrey,* 75 Mich. 115, 124 (42 N. W. 681); *Brown* v. *Kalamazoo Circuit Judge,* 75 Mich. 274, 278, 284, 285 (42 N. W. 827, 5 L. R. A. 226, 13 Am. St. Rep. 438).

3. "The complainants in this case have not a complete and adequate remedy at law. The defendants concede that, if the remedy at law is in any way inadequate and incomplete, the chancery court has jurisdiction. . The remedy which they have in mind, apparently, is the final relief which can be had,—the final judgment at law or decree in chancery. 'Remedy' implies much more than that. It covers both the relief and the procedure. As Mr. Pomeroy states it, 'The English judges have virtually said that, in every case of fraud, the remedy at law, either from the legal relief itself or from the methods of legal procedure, is inadequate,'"—citing 2 Pom. Eq. Jur. § 912; *Ochsenbein* v. *Papelier,* 8 Ch. App. Cas. 695; *Wallace* v. *Harris,* 32 Mich. 380; *John Hancock Mut. Life Ins. Co.* v. *Dick,* 114 Mich. 337 (72 N. W. 179, 43 L. R. A. 566).

It is said by the solicitor in his brief:

"It does not matter that the law courts can give a plain, adequate, and complete relief;" citing *Wallace* v. *Harris,* 32 Mich. 380, 381; *Edsell* v. *Briggs,* 20 Mich. 429, 433; *Warren* v. *Holbrook,* 95 Mich. 185, 189 (54 N. W. 712, 35 Am. St. Rep. 554); *Wyckoff* v. *Machine Co.,* 43 Mich. 309 (5 N. W. 405); *Tompkins* v. *Hollister,* 60 Mich. 470, 479 (27 N. W. 651); *Wright* v. *Hake,* 38 Mich. 525; *McKinney* v. *Curtiss,* 60 Mich. 611 (27 N. W. 691); *Tyler* v. *Savage,* 143 U. S. 79 (12 Sup. Ct. 340).

The last-named case, the solicitor says, is especially in point. A reference to the case indicates that there was involved in the case what the court stated in its opinion at page 95, 143 U. S.: "Thus there were in the case, as

ingredients to support the jurisdiction of equity, discovery, account, fraud, misrepresentation, and concealment." It also appears that there was no objection made to the bill in the court below for want of equity. Many of the cases discussed by the learned judge in that case held that, where there was a plain, adequate, and complete remedy at law, the chancery court would not take jurisdiction.

Is the claim of the solicitor that in this State chancery has concurrent jurisdiction with courts of law, in all cases of fraud, true? An examination of the cases cited will hardly bear out that conclusion. Much reliance is placed upon the case of *John Hancock Mut. Life Ins. Co.* v. *Dick, supra.* This case was a border-line case, but an examination of it shows that complainant prayed for an injunction, and that the policy might be declared void on the ground of fraud, and that it be surrendered for cancellation. It, of course, is apparent that a court at law could not have ordered the cancellation of the policy.

In *Tompkins* v. *Hollister, supra,* the record shows that the relation between Hollister and Tompkins was a fiduciary one; and the court said:

"Especially does equity take cognizance of a case where one holding confidential and fiduciary relations to another, and thereby morally and legally bound to communicate facts, conceals them for his own benefit and profit, and to the disadvantage of the other."

In *McKinney* v. *Curtiss, supra,* the court used this language:

"The first ground relied on, that complainant has a remedy at law which was adequate, cannot be sustained. The defendant Mrs. Curtiss is shown by the record to be entirely insolvent, and there is nothing to prevent the administrator paying to her the amount of the note, except this suit."

In *Wyckoff* v. *Machine Co., supra,* an injunction was prayed to restrain the delivery of a contract in violation of an agreement to hold it as an escrow; and the court said,

after holding that there was a concurrent remedy in cases of fraud:

" And as equity, in this case, could require the surrender of the agreement and the machines on just terms, its remedies would be more complete and ample than any which a court of law could afford."

In *Warren* v. *Holbrook, supra,* it was held that courts of equity have jurisdiction to compel an accounting where fiduciary relations exist or fraud is charged, and in that case it was held. that the fiduciary relation existed, and that it was a proper case to allow the aggrieved party to have an accounting and to pursue the fund.

In the case of *Edsell* v. *Briggs, supra,* the court said that it was not satisfied that the complainants had a remedy in a suit at law.

The case of *Wallace* v. *Harris, supra,* was one where the court held that the remedy in equity was fuller and more appropriate than would be one at law, and the court used this language:

"We think the case presents such complications, such obstacles to a disposition at law, * * * that a speedy, full, and just solution could be had only in a court of equity."

In *Brown* v. *Kalamazoo Circuit Judge, supra,* the court used this language:

"The universally-recognized basis of equitable jurisprudence, found in statutes and constitutions, as well as in the reports and text-writers, is the inadequacy of the common law to deal with these subjects."

It will be observed that it did not appear in any of these cases that there was a full and complete remedy at law, free from the existence of a fiduciary relation, or the right to have an accounting, or the right to have some other relief peculiar to a court of chancery.

The questions involved are not new in this State. The same issues arose in *Teft* v. *Stewart,* 31 Mich. 367, where Justice GRAVES uses this language:

"They further explicitly claimed that the bill did not make a case of equitable cognizance, and insisted that his remedy, if any, was at law. * * * It appears to me quite impossible, in the face of the objection taken and insisted on, to sustain this decree without sanctioning the right to come into equity in all cases to recover damages where the grievance asserted is a fraud committed by one upon another in a dealing in personal property. If the right contended for and carried out by the decree can be maintained, no reason is perceived why, upon the same principle, a party claiming to have been cheated in a horse trade, or in a purchase of any chattels, where the amount is sufficient, may not, at his election, proceed to sue in chancery for damages, and preclude an investigation before a jury. The principles and course of practice of the court are, however, not in harmony with any such procedure. It is admitted that the books commonly say that equity has jurisdiction in all cases of fraud, but every one knows that the proposition is not to be accepted literally. It must always be understood in connection with the genius and specific remedial powers of the court. These confine it absolutely to civil suits. They also confine it, when the point is seasonably and properly made and insisted on, to transactions where, in consequence of the indicated state of facts, there appears to be ground for employing some mode of action, or some kind of aid or relief, not practicable in a court of law, but allowable in equity. In the present case no injunction was called for, and there was no ground for discovery, and no discovery was sought, as the bill waived an answer on oath. No claim was set up to have the deed from Sherwin to Stewart set aside, or to have the land conveyed to complainant, and no case is made to warrant such a claim, since the bill contains nothing to show that third persons may not have acquired interests on the faith of Stewart's title. Indeed, no circumstances are set forth to call specially for equitable intervention, or for any assistance or mode of redress peculiar to chancery procedure. The facts as given, and the case as shaped, point to just the action and relief peculiar to a court of law. They look to a single judgment for damages, and nothing else. The case, then, was really of legal, and not in strict propriety of equitable, cognizance. The objection was timely made and urged, and complainant was bound to regard it; and unless it is to be maintained that in all cases standing on the same principle a complaining party is to be allowed by his elec-

tion to try in chancery, and prevent an investigation by jury, the point made by appellant must be sustained, and in my judgment it should be,"—citing many cases. .

In *Hagenbuch* v. *Howard*, 34 Mich. 1, the court in equity declined to interfere by injunction to restrain the collection of a tax on personal property, because the complainant had an adequate remedy at law.   The same ruling was made in *Mears* v. *Howarth*, 34 Mich. 19.   In *Bay City Bridge Co.* v. *Van Etten*, 36 Mich. 210, the court declined to entertain the bill for the reason that complainant had an adequate remedy at law.   In *Shaw* v. *Chambers*, 48 Mich. 355 (12 N. W. 486), Justice COOLEY, speaking for the court, said, "Equitable juris- ·diction is to be invoked only when the common law is inadequate to give full relief."   In *Stoddard* v. *McLane*, 56 Mich. 11 (22 N. W. 95), Justice COOLEY, speaking for the court, said, "In general, liens obtained by the levy of executions on personalty do not require the aid of equity for their enforcement, and alleged fraudulent transactions which affect them are best investigated in the courts of law."    In *Prescott* v. *Pfeiffer*, 57 Mich. 21 (23 N. W. 477), a bill in the nature of a creditor's bill was dismissed. Justice CAMPBELL, speaking for the court, used the following language:   "But, inasmuch as he must sue as an assignee, he must sue in such a form as the nature of the case requires; and, if there is an adequate remedy at law for the judgment creditors or for himself, there is no occasion to resort to equity."   In *Pulezer* v. *Kucharzyk*, 116 Mich. 92 (74 N. W. 304), the bill of complaint was dismissed for the reason that complainant had an adequate remedy at law.

I do not understand that, every time a man has been defrauded in a horse trade or in the purchase of a stock of goods, he may invoke the aid of a court of equity, even though he had an adequate remedy at law.   It is doubtless true that, in cases of fraud, the equity court has concurrent jurisdiction with courts of law, and its aid may be invoked if the relief sought is of an equitable char-

acter, but this case is not such a one.   The bill calls for a money judgment, and does not show that the equity powers of the court are necessary for its enforcement. The case is of such a character that it can best be investigated in a court at law, where the parties can have the benefit of a jury trial, if they so desire.  *Bennett* v. *Nichols*, 12 Mich. 22; *Smith* v. *Walker*, 57 Mich. 456 (22 N. W. 267); *Stoddard* v. *McLane*, 56 Mich. 11 (22 N. W. 95); *Prescott* v. *Pfeiffer*, 57 Mich. 21 (23 N. W. 477).

The demurrers should have been sustained.   The decree is reversed, with costs.

MONTGOMERY, C. J., concurred with MOORE, J. HOOKER, LONG, and GRANT, JJ., concurred in the result.