Kennedy et al. *v.* Northup et al.

JANE C. KENNEDY et al., Appellants, *v.* HENRY NORTHUP et al., Appellees.

APPEAL FROM ADAMS.

It is the right and duty of a court of equity to determine from the circumstances of the case, as bearing upon the rights of parties, whether it will assume jurisdiction in cases of fraud or not; and the court will interfere upon a proper case presented to set aside a title fraudulently obtained.

The words "subsequent purchasers" in the recording act, mean subsequent purchasers from the heir, as well as from the original grantor.

THIS cause was heard before O. C. SKINNER, Judge, at October term, 1853, of the Adams Circuit Court.

On the 9th day of May, 1853, Jane C. and Sarah Kennedy filed their bill in the Adams circuit court in chancery, against Robert Weiant, Lovinia Otto, Charles Otto, Caroline Troxell, William H. Troxell, Sabina Otto, Henry Northup, Eli Ebert, and A. B. Wheeler, all of whom are non-residents except Ebert and Wheeler, and also filed affidavit of such non-residence. Summons was duly issued, and notice given at the October term, 1853. Said bill was taken as confessed, as to all of said defendants except said Northup, Ebert, and Wheeler, who appeared by their counsel and filed their demurrer to the complainants' bill, and the complainants joined in demurrer, and upon the hearing the court sustained the said demurrer, and dismissed said bill absolutely as to said Northup, Ebert, and Wheeler, which disposed of the whole case. No relief being sought as to the other defendants.

The bill states that on the 24th of March, 1818, the southeast quarter of section one, T. 2 S. R. 7 W. of the fourth principal meridian, in Illinois, was granted by the United States to one Peter Weiant, by letters patent of that date, and that the title thereof in fee thereby became vested in the said Peter Weiant; that afterwards and while said Peter Weiant was seized in fee of said premises, and on the 19th day of June, A. D. 1818, said Weiant by his deed of that date, for a valuable consideration, conveyed said premises to one Robert D. Stewart, in fee, which deed was recorded in Adams county on the 26th day of Dec., 1850; that while said Robert D. Stewart was seized in fee of said premises, and on first day of June, 1820, said Stewart and his wife, by their deed of that date, for a valuable consideration, conveyed said premises in fee to one William M. Kennedy, which was on the 22d day of May, 1821, duly recorded in the recorder's office of Pike County, Illinois.

The said deed from said Stewart to Kennedy, recorded as aforesaid, recites that "whereas James Monroe, President of the United States of America, did, by his patent under the seal of the general land-office, signed with his name at the city of Washington, on the" 24th day of March, 1818, "granted unto Peter Weiant, late a private in Biddle's company of artillery, a certain tract of land, containing one hundred and sixty acres, being the south-east quarter of section one, of town-

13 *

ship two, south range seven west, in the tract appropriated by acts of Congress, granting lands to the late army of the United States, passed on and since the 6th day of May, 1812" — " and whereas the said Peter Weiant did, by his transfer, written on the back of said patent, transfer, set over, bargain, and sell the said patent with all the land therein contained and granted, in as full and ample a manner as the same was granted unto him, to Robert D. Stewart, first party to these presents, and to his heirs and assignees forever" — " which transfer is dated on the 19th day of June, 1818" — " and acknowledged on the same day" — " reference thereto being had, will more fully appear" — " and charges that the same was notice to subsequent purchasers and creditors, that said Weiant had conveyed said premises to said Stewart, and that said Kennedy claimed the same by conveyances from said Peter Weiant, and that by proper inquiry the fact aforesaid would have been ascertained; that said William M. Kennedy died on the 25th day of Sept. 1839, intestate, seized in fee of said premises; that said premises descended to the complainants, the children and only heirs at law of said Wm. M. Kennedy; that up to the 20th Nov. 1850, except as stated in said bill, said premises had been vacant; that the taxes levied on said premises had been paid by said Wm. M. Kennedy during his lifetime, and by the complainants since his death, through Messrs. Moore, Morton & Co., of Quincy, Ill., their agents; that on the 31st day of May, 1850, a paper dated 31st January, 1850, purporting to be a deed of grant, conveyance, confirmation, and release, of all the right, title, interest, and estate, of whatever kind and nature of said defendants, Weiant, Ottos, and Troxells, in and to said premises, to said Henry Northup, to hold, " for the same estate and in the same manner as we Robert, Caroline, Lovinia, and Sabina, only children and heirs at law of Peter Weiant deceased, had and held the same," for the pretended consideration of $80, was recorded in the recorder's office of Adams county, Illinois; that on the 20th Nov. 1850, a certain other paper purporting to be a deed from said Northup by his attorney, H. L. Northup, who resides in Adams county, Illinois, to said Ebert, for said premises, was recorded in the recorder's office of said county of Adams.

On the 19th day of February, 1852, a pretended deed from said Ebert to said Wheeler, for the south half of said premises, was recorded in the recorder's office of said county of Adams, dated 21st June, 1852, long after the said deed from the said Peter Weiant to said Stewart was recorded. Said Ebert is in possession of the north, and said Wheeler of the south half of

said premises, and claims to hold the same under said pretended deeds, from said Robert Weiant *et als.* to Northup, Northup to Ebert, and Ebert to Wheeler, as innocent purchasers, for a valuable consideration without notice of oratrixes' title, and adversely to your oratrixes. Charges that Ebert and Wheeler are not innocent purchasers; that they had notice of and well knew that said premises were owned by your oratrixes in fee, by deed from said Peter Weiant to Stewart, and Stewart to Kennedy, and by descent to them; that they had negotiated with your oratrixes' guardian, and also said agents for the purchase thereof, and by whom they were informed of your oratrixes' title, and that their said pretended purchase and claim is fraudulent and void as to your oratrixes. Charge that said R. Weiant, Ottos, and Troxell, never had any right, title, or interest in said premises, and that said Northup obtained no title thereto by said pretended deed from them. Death and heirships of Peter Weiant not known, but charges that if dead he did not die seized of said premises, and whoever his heirs are, they never had any interest in said premises, and could convey no interest therein to any third person; that said pretended deed as such heirs, does not purport to convey title, but to be a simple deed of release, and a purchaser and those under him are bound to take notice of all equities or titles, equitable or le , ¹, and are not protected against; that said deeds to said I 'hup, Ebert, and Wheeler, are a cloud on the title of your ( ·ixes, and are fraudulent, prayer that they may be set asia ¹at said Ebert, knowing your oratrixes' title, fraudulently pr ?d Northup to find Peter Weiant, if living, and if dead, his _.s, and get a deed of said premises to himself, and have it recorded before your oratrixes' said deed from Peter Weiant to Stewart should be recorded, thereby to defeat your oratrixes' title; that Northup did, in pursuance thereof, procure said deed from R. Weiant *et als.* to himself, and made said deed to said Ebert, and charge both deeds to be fraudulent and void as to your oratrixes. Said Northup knowing your oratrixes' title aforesaid, fraudulently combined with Ebert to procure, and with said R. Weiant and others to make, said deed to Northup, well knowing that they had no interest in said premises, and spread the · same of record with the fraudulent purpose of defeating your oratrixes' said title, each of them knowing of said unrecorded deed of said P. Weiant to Stewart, and your oratrixes' claim under the same. Charges knowledge, by R. Weiant and others, grantors, and Northup, grantee of the said deed from P. Weiant to Stewart, and fraudulent combinations, and making deed to Northup to defeat the same; that

said premises during all the year 1850, was worth six hundred dollars; that said Ebert for years prior to 1850 had had actual possession of a part of said premises by inclosure thereof, and constructive possession of the balance by cutting wood, poles, &c., and keeping others off, claiming under your oratrixes, and that his possession was as their agent and tenant, and was notice of their title thereto; that said Northup, Ebert, and Wheeler, had notice of your oratrixes' title, and are not innocent purchasers for a valuable consideration without notice.

Prayer, that said deeds to Northup, Ebert, and Wheeler be set aside for fraud, also for general relief.

Oct. 31, 1853. Demurrer of Northup, Ebert, and Wheeler, filed by Williams and Lawrence, solicitors. Joinder by complainants' solicitors. Decree *pro confesso* as to the others.

Nov. 1, 1853. Demurrer sustained, and bill dismissed absolutely as to Northup, Ebert, and Wheeler. Judgments for costs and award of execution. Complainants prayed an appeal, which was allowed, and appeal bond filed. And the appellants assigned for error: That the court erred in sustaining the demurrer to the complainants' bill, and dismissing said bill and rendering a decree against the complainants for costs; that the court erred in sustaining said demurrer of said Northup, Ebert, and Wheeler, and dismissing said complainants' bill absolutely; that the court erred in dismissing said bill of complaint absolutely, when it should have been done, if at all, without prejudice.

WARREN and EDMUNDS, for appellants.

WILLIAMS and LAWRENCE, for appellees.

CATON, J. The first question which properly arises in this case, is that of jurisdiction. The bill is filed for the purpose of setting aside certain deeds held by the defendants which it is alleged were fraudulently obtained, and which remain as a cloud upon the complainants' title. It is objected that the defendants are in possession, which enables the plaintiffs to bring ejectment, and thus contest the fraudulent deeds in a court of law, and that hence a court of equity will not assume jurisdiction to try the validity of those deeds and set them aside. In support of this position the case of The Insurance Co. *v.* Buckmaster, 13 Ill. 201, is relied upon. In that case this court held that a bill would not be entertained for the purpose of setting aside a conveyance which was a cloud upon the title of the real owner, where the latter was in a position to bring

an action at law to try the sufficiency of the title sought to be set aside. We are still of opinion that the decision in that case was correct, where the question of jurisdiction depends upon the fact alone, of an outstanding title which is complained of as a cloud upon the complainants' title. Where the simple question is as to which is the better legal title, the party should go to a court of law, if he is in a position to bring both titles before that tribunal. In the case referred to, the complainants claimed title, first, under a decree foreclosing a mortgage, and second, under certain tax titles, and the defendant claimed under a title acquired at a sheriff's sale upon an execution at law; and the question sought to be raised was, which was the better legal title, and as the complainants had it in their power to bring an action at law which would compel the defendant in that action to set up Buckmaster's title, it was held they should be compelled to do so, and should not be allowed, in the first instance, to bring a suit in equity to try its validity. There was no question of fraud in the case, nor other circumstance rendering it proper to resort to chancery in the first instance. Here, however, the case is very different. The very gist of the complaint is that the title, under which the defendants claim, was obtained by fraud; and if the fraud cannot be established, the defendants' title must prevail. While a court of equity will not take jurisdiction of every case of fraud which may be presented, yet there are few questions over which its jurisdiction is more universal, and especially so when it relates to the transfer of real estate. The books are full of cases presented in every conceivable form in which courts of equity have assumed jurisdiction, and set aside conveyances fraudulently obtained. Perhaps in no form has the question more frequently arisen and been decided, than upon applications to set aside conveyance fraudulently obtained, and which created a suspicion of the validity of the title of the real owner. Briggs *v.* French, 1 Sumn. 504, was a case of that kind, and in answer to the objection to the want of jurisdiction, Story, J. said, "but a court of equity has a clear concurrent jurisdiction with courts of law in cases of fraud." And in the case of Massie *v.* Watts, 6 Cranch, 158, where the object of the suit was to prevent the defendant from making a fraudulent conveyance of land lying in another State, Marshall, C. J. said, "This court is of opinion that in a case of fraud, of trust, or of contract, the jurisdiction of a court of equity is sustainable wherever the person be found, although lands not within the jurisdiction of the court may be affected by the decree." The power of the court to set aside conveyances or other documents

which, while outstanding, endanger or threaten the rights of others, was extensively examined in the case of Hamilton *v.* Cummings, 1 John. C. R. 553, by Chancellor Kent, who thus concludes his researches : " Perhaps the cases may all be reconciled on the general principle, that the exercise of this power is to be regulated by sound discretion, as the circumstances of the individual case may dictate." It may be well here to remark, that the jurisdiction of a court of equity is not bounded by a fixed and arbitrary line, up to which the court must go whenever called upon, and beyond which it can never proceed. Cases are constantly arising in which the court may refuse to act, and yet in deciding which, it would not usurp a power not legally possessed. Cases of fraud even, may frequently arise of which it may, in the exercise of a sound discretion, refuse to take jurisdiction, and yet the cases are very rare indeed, where it may not, if it choose, interpose and set aside the fraudulent act. The soundness of Chancellor Kent's suggestion on this subject cannot at this day be well questioned, and it is the undoubted duty as well as right of a court of equity, to determine from the circumstances of the case, as bearing upon the rights of the respective parties, whether it is proper for the court to assume jurisdiction or not.

In the case before us, we think the complainant has a right to have the defendants' title set aside, if, as is alleged, it was acquired with a full knowledge of the complainants' title, and with the fraudulent purpose of supplanting and defeating it; although it may be true that the fraud, if proved, might defeat that title in a court of law, yet the courts of equity have ever claimed to possess superior facilities for investigating such questions, to the courts of law, and certainly the relief which they can give is, in many cases, more satisfactory. When the fraud is once established, they can cut up the fraudulent conveyance or contract by the very roots, and leave the party in as secure a position as if it had never existed. This, especially as to conveyances of land, can only be done indirectly, and after repeated trials by the courts of common law.

There is another question in this case which requires consideration, and upon which I have not arrived at a conclusion without hesitation and doubt. The complainant claims title under a deed from the patentee to Stewart, which was executed in 1818, but which was not recorded till 1850. After the execution of that deed, and before it was recorded, Weiant, the patentee, died, and his heirs executed the conveyance of the premises to Northup, and which was recorded before the deed from the patentee to Stewart was placed on record. Under

Kennedy et al. *v.* Northup et al.

this deed from the heirs of the first grantor to Northup, the defendant claims title; and the question is, which of these deeds shall prevail. This depends upon the construction to be given to our recording laws. The statute provides as follows: " All deeds, mortgages, and other instruments of writing which are required to be recorded, shall take effect and be in force from and after the time of filing the same for record, and not before, as to all creditors and subsequent purchasers without notice; and all such deeds and title papers shall be adjudged void as to all such creditors and subsequent purchasers without notice, until the same shall be filed for record." Purchasers from whom, and whose creditors, are here meant? The complainant contends that only purchasers or creditors of the grantor of the unrecorded deed are meant; and in support of his position he cites several decisions from Kentucky. The first is that of Rolls *v.* Graham, 4 Mon. 120, where the court held, under a statute almost precisely like ours, that an unrecorded deed should take precedence of a recorded conveyance from the devisee of the grantor in the unrecorded deed. They put it upon the ground that the statute only makes void unrecorded deeds as to subsequent purchasers from the same grantor, and not from his heirs or devisees. Again, in the case of Hancock *v.* Reverly, 6 B. Monroe, 531, the same construction was given to the statute, and applied to a deed from the heir of the grantor in the unrecorded deed. In this case the court concede that the question as an original one is doubtful, and place their decision upon the authority in 4 Monroe.

A different construction was, however, given to a similar statute in Tennessee, in the case of McCulloch *v.* Eudaly, 3 Yerger, 346. The reason assigned for that decision, however, cannot certainly be sustained, for they place it upon the ground that the fee remained in the grantor in the first deed, till that should be recorded, which not having been done, the legal title descended to the heir. Now it is everywhere else decided that the legal title does pass by the deed alone, although it may never be recorded, while, by force of the recording laws, that deed may be postponed in favor of a subsequent one to a *bonâ fide* purchaser which is recorded.

In the case of Powers *v.* McFarren, 2 Serg. & Raw. 44, the supreme court of Pennsylvania held, under a statute like ours, that a deed from the heir should prevail over the unrecorded deed from the ancestor, and they place it upon the broad ground that the expression " subsequent purchasers " means subsequent purchasers from the heir, as well as from the original grantor himself. After much reflection, I am satisfied that this is the

true and proper construction of the statute. It meets the objects designed to be accomplished by the law, and is within the reason which gave rise to the enactment. It was the object of the legislature to make potent the titles to real estate, that purchasers might know what title they were acquiring. Where a deed is not recorded, the title is apparently still in the grantor, and the law authorizes purchasers who are ignorant of the conveyance, to deal with him as the real owner. In case of his death, the heir becomes the apparent owner of the legal title; and it is equally important, and equally as just, that the public may be allowed to deal with him as with the original grantor, if living. This, it is true, cannot with propriety be always permitted without cutting off devisees, and perhaps creditors. A will may be valid and convey the legal title to the devisee, although it may not be probated and recorded, or even known to exist for a long time, but when discovered the devisee may assert his legal title under it, to the exclusion of the grantee of the heir, who was the apparent legal owner, and so may creditors assert their claims within a certain time, and whoever purchases of the heir must take his conveyance subject to be thus defeated. This is no doubt an evil which, were it practicable and compatible with justice, it would be desirable to remedy. But because the statute could not be framed, or cannot be so construed as to meet every contingency, it is no reason why it may not accomplish the object of its enactment as far as that may be justly done. There is as much justice in protecting the purchaser from the heir, as from the ancestor; and because this may not be done in every case, it is no reason why it shall not in any. It is true, that neither the heir nor devisee could hold the title against the unrecorded deed, nor could the grantee in a voluntary deed. And yet the grantee in a subsequent conveyance may hold the title, if he purchases in good faith, and for a valuable consideration, and his deed is first recorded; so that the fact that the apparent legal owner may not hold against the unrecorded deed, does not prove that he may not convey to another who may hold against such deed. A *bonâ fide* grantee from a fraudulent purchaser may acquire a good title, as well as a *bonâ fide* grantee from a fraudulent purchaser. When the title once vests in, or passes through meritorious hands, it becomes purified, and is as valid and effectual as if it had never been exceptionable. Although the heir himself might not prevail against this unrecorded deed, it does not follow that he may not convey to one who may prevail.

This construction, too, is equally within the literal expressions of the statute. The expression is, subsequent purchasers,

but it does not say purchasers from whom. That is left to construction. Some word must be supplied by intendment or construction, not for the purpose of extending the language in order to effectuate the objects of the law, but for the purpose of limiting the language so that it shall not go beyond the intent of the statute. The language itself does not limit the application to purchasers from one person more than another; but the manifest object of the law does limit it so as to exclude from its protection those who might purchase from strangers. Without a limitation to at least that extent, the law would become simply absurd. Now the question is, shall we carry this restriction so far as to exclude all except purchasers from the first grantor? To prescribe the extent of the limitation to be thus introduced into the act by construction, we must look to the object of the act, the mischief to be prevented, and the protection or relief designed to be afforded to those for whose benefit the law was passed. We have already seen that these considerations apply as forcibly to purchasers from heirs or devisees, as to purchasers from the ancestor. During the lifetime of the grantor in an unrecorded deed, the apparent title is in him; and he who purchases in good faith that apparent title, it is conceded on all hands, is protected by the statute. After the death of such original grantor, the apparent legal title is in the heir, and the policy of the law, which is to make potent all legal titles to land so far as practicable, that strangers may safely purchase, equally requires that the *bonâ fide* purchaser from the heir should be protected. By the fault of some one the land has been twice sold, from which some one must suffer; and is it not right, is it not in harmony with every principle of law, that he who is in fault, in not notifying the world by recording his deed, shall suffer the loss which has resulted from such negligence? If, then, we look at the objects and policy of the law for the purpose of determining how far we shall allow the general words of the law to have effect, and how far we shall restrain them, we cannot find the warrant for saying that they shall be so restrained as to exclude purchasers from the heir, any more than one who purchased from the original grantor. I am of opinion that the conveyance from the heirs, if *bonâ fide*, must hold the land.

The decree must be reversed, and the suit remanded.

*Decree reversed.*

Scates, Justice, dissented.