John Sherman and George H. Harms v. The American Stove Company et al.

*Corporations—Stock subscription—False representations—Cancellation—Equity—Parties.*

1. Where two persons purchased stock in a corporation at the same time, and under one and the same arrangement, and the false representations inducing such purchase were made to them jointly, or to one while he was acting for the other in negotiating such purchase, they may join in a bill to set aside such purchase on the ground of such false representations.

2. In this case, on an examination of the proofs, the Court find the main allegations of complainants' bill sustained, and the decree rescinding the contract for the purchase of stock in the

85 169
s48ᴺᵂ 537
132 ¹ 5
85 169
136 217
85 169
143 159
143 161
f143 ¹285

defendant corporation, and cancelling its issue, and adjudging that said contract was procured through the false and fraudulent representations of the defendant stockholders, is affirmed.

Appeal from Wayne. (Reilly, J.)   Argued February 5 and 6, 1891.   Decided April 17, 1891.

Bill to cancel a subscription to the capital stock of defendant corporation on the ground of fraud. Defendant Hurley appeals. Decree affirmed. The facts are stated in the opinion.

*Julian G. Dickinson,* for complainants.

*W. F. Atkinson,* for appellant.

MORSE, J. The complainants filed their bill of complaint in this cause, alleging that they were induced to take 120 shares in the American Stove Company, and pay $3,000 therefor, by the misrepresentations of the defendants.

The American Stove Company was a corporation organized July 22, 1887, and its articles of association, on file in the county clerk's office of Wayne county, showed that the defendants John Hurley, John Conway, Thomas Conway, and Joseph McWilliams each held 120 shares of the stock of said company, and Jacob Buehrle 10 shares; that the authorized capital stock was 810 shares, at $25 per share, of which $12,250—the amount held by the defendants above named—was paid in. The officers were John Hurley, president; Thomas Conway, vice-president; Joseph McWilliams, secretary and treasurer; and John Conway, manager. The said defendant stockholders were all directors. The complainants, prior to purchasing the stock, were copartners, carrying on a retail hardware business on Woodward avenue, Detroit, under the name of Sherman, Harms & Co.

The false representations alleged in the bill are substantially that, in the first place, defendant McWilliams came to them, and represented the company to be organized, as shown by its articles of association, with a paid-up capital of $12,250, and an authorized capital of $20,-250; that said corporation was making 10 stoves a day, at from $3 to $4 each profit; that the job-work more than paid the whole expenses of the company; and that the corporation owned the land where its shop or factory was located, and had no rent to pay.

That they were afterwards introduced to John and Thomas Conway by McWilliams at the shop, and that McWilliams and John Conway showed them the works, and represented that the company was making 10 stoves per day, which number was not enough to fill the orders on hand; that complainant Sherman afterwards saw John Conway at the factory, and said to him, in his own behalf and that of Harms, that, if they purchased any stock in the corporation, they would want work in the shop or business; that Harms could keep the books, and Sherman sell the goods; that they would each require at least $2.50 per day as compensation for such labor; that Conway said the company wanted two men like the complainants, and that a meeting of the directors would be called, and would consider the matter, and notify complainants. Sherman also saw the defendant Hurley, who said that he knew the Conways and McWilliams to be hard-working, practical men; that he (Hurley) caused the organization of the company, and paid in $3,000 with the other members, and made up, in all, $12,250 paid-in stock. Sherman said Harms could keep the books, and Sherman sell the goods, and that they would not sell out their business unless they could each get $2.50 per day for their work. Hurley replied: "That is just what we want; we need two practical men;" and that the pay

asked for the work was cheap enough; and that the business of the company was a first-class paying business, and he would be pleased to have complainants go into it. Afterwards the Conways and McWilliams came to complainants' store, and notified them that the corporation would sell them 120 shares of stock, to be fully paid up, for the sum of $3,000; that they had taken an inventory of the corporate property, and the business showed an increase of 18 per cent. since the incorporation of the company, in July, 1887; that the company had a good credit, and could at any time get five or six thousand dollars at the bank, but the corporation was out of debt, and need not borrow any money. This was on or about the 19th day of December, 1887.

Relying upon these representations, the complainants made no further investigation, and agreed to take the stock, and pay for it on or before the 1st day of May, 1888, ."When, as it was mutually agreed, complainants would enter the employment of said corporation at the aforesaid compensation of $2.50 per day." They paid the $3,000, and were given receipts for the payment of the same as they paid it in; the last payment being made on March 3, 1888. Sherman was given employment, but not in the selling of goods, March 7, 1888; but Harms was repeatedly refused work, and was not allowed to take charge of the books, and was not permitted to see or examine them except in the presence of McWilliams. March 26, 1888, he was finally put at work making castings. The complainants first examined the books of the corporation about April 3, 1888, and then for the first time discovered the fraud relative to the representations made by said defendants.

Complainants allege that the said representations were untrue; that there was not a capital stock of $12,250 paid in; that the said defendants have never paid up the

amount of stock held by them, respectively, further than to call certain inventoried property and effects as paid up stock, which is not warranted as against the complainants in the premises; that the defendants now claim that the real estate upon which the shop is situated is not the property of the corporation, but the property of Conway, McWilliams & Co., a pre-existing copartnership or co-tenancy, composed of the defendants Conways, McWilliams, and Hurley. Complainants further allege that all the property of the corporation is not worth in the aggregate to exceed the sum of $3,500.

They further allege that the defendants also represented to them, before they purchased said stock, that said corporation, from July up to December, 1887, had made about 18 per cent., which was shown by the inventories exhibited to them. They charge that the inventory which showed this increase was a fraudulent one, and that the property in fact had depreciated, instead of increasing, in value, from July to December. Complainants further allege that the paid-up stock held by said defendants, and purporting to be of the amount of $12,250, was furnished by taking the property of the firm of Conway, McWilliams & Co., placing an erroneous valuation upon it, and turning it in as so much capital stock. On March 30, 1888, the complainants called upon Hurley, the president of the corporation, for a meeting of the board of directors; and such a meeting was held at the office of said Hurley on April 7, 1888. The complainants attended said meeting, and tendered to said corporation their corporate stock so purchased, and requested that their money paid for said stock be returned to them on account of the fraud and misrepresentation heretofore alleged, and stated to said directors that there was still remaining in the Merchants' & Manufacturers'

National Bank of Detroit the sum of $400 of the money that complainants had paid into said corporation for their stock, and that there must be more of the $3,000 paid by them within the reach or call of said directors. But the said defendants refused to accept the tender of said stock, or to refund complainants their money, or any part thereof, claiming that the said corporation was heavily in debt; that nearly all of said $3,000 had been paid out; and that the real estate upon which the shop was located was not the property of the corporation, but belonged to Conway, McWilliams & Co. The complainants allege that all of said $3,000 was not paid out for valid corporate purposes, and that said corporation is insolvent. They never received any certificates of stock until after this meeting, when they received such certificates of 60 shares each by mail, signed by John Hurley as president, and Joseph McWilliams as secretary. Complainants further allege that said defendants John Hurley, John Conway, Thomas Conway, and Joseph McWilliams willfully concealed the facts as to the character of the paid-up capital stock of said corporation, and as to the indebtedness of such corporation, with a view fraudulently to acquire the money of said complainants so paid by them for said stock.

The bill prays that their subscription to said stock may be canceled, and they be released from all responsibility as stockholders in said corporation, and that said corporation and the defendants be decreed to restore to the complainants the said sum of $3,000 received from them for said stock, and the transaction by which such money was obtained be declared fraudulent and void. A temporary injunction was also asked to prevent the using or disposing of any of the money received by defendants from complainants, and restraining them from disposing

of the real estate as the property of Conway, McWilliams & Co.

The defendants answered, denying any fraud or fraudulent or false representations in the sale of said stock.

Proofs were taken in open court, and a decree rendered in favor of complainants, rescinding the contract of purchase of the stock, canceling the issue of said stock, and adjudging that the contract for the purchase of the same was procured by the false and fraudulent representations of the defendants John Hurley, John Conway, Thomas Conway, and Joseph McWilliams. It was also decreed that the above-named defendants and the American Stove Company pay over to the said complainants the sum of $3,450, being the $3,000 paid for said stock, with the interest thereon, and that in default of such payment execution do issue for the same.

We have examined the proofs, and find the main allegations of the complainants' bill sustained; and the decree of the circuit court for Wayne county in chancery will stand affirmed.

It is objected that the testimony shows that complainants, Sherman and Harms, did not purchase this stock as copartners, but each for himself, and that therefore the bill ought to be dismissed. While it may be that it was not intended that the stock purchased was to be taken in copartnership by the complainants, or that each should share equally in the wages of the other in the work they were to perform for the corporation, the fact remains that the stock was purchased at the same time, and under one and the same arrangement, and the money was drawn out of the old copartnership between them, and paid virtually in one sum, without any division, for the stock. Sherman did most of the negotiating for the stock, acting for both of them, and the buying of the stock and paying for it was done by them jointly, as a joint transac-

tion. They acted jointly from the beginning until the end; demanding the money back, and tendering their stock to the corporation, together, and as one. The false representations upon which they acted and relied in the purchase of the stock were made to them jointly, or to Sherman while he was acting for both of them. There is not a single thing in the whole transaction applying to or affecting one which does not also apply to and affect the other. The case of one is the case of both, and the relief asked is common and identical. We can see no good reason why the complainants cannot apply jointly for relief, or why the relief should not be granted them jointly.

It is also contended that the complainants have a full and adequate remedy at law. The bill and the proofs, in our opinion, make a case for the interposition of a court of equity. The complainants are entitled to have the contract whereby they became stockholders of the corporation set aside and annulled for fraud; and, under the circumstances of the case, the remedy by injunction sought by the bill was necessary, in order to hold and preserve their rights in the premises until a final decree could be obtained.

The decree is affirmed, with costs.

The other Justices concurred.