JOHN CLAY, Jr. *et al.*

*v.*

HERBERT HAMMOND.

*Opinion filed October 25, 1902—Rehearing denied December 9, 1902.*

1. CLOUD ON TITLE—*when rule that complainant must be in possession unless premises are vacant does not apply.* The rule that the complainant in a bill to remove a cloud from title must be in possession or the premises be vacant does not apply where the deed or other instrument alleged to be a cloud is sought to be set aside upon the ground of fraud.

2. INSANE PERSONS—*deed of an insane person may be set aside after restoration to sanity.* Whether a deed executed by an insane person is void or merely voidable, it may be set aside by the grantor after his restoration to sanity, or by a grantee to whom the insane person conveyed the premises after his restoration to sanity.

3. SAME—*one knowingly dealing with insane person is deemed guilty of fraud.* One dealing with an insane person with knowledge of such insanity is deemed guilty of premeditated fraud.

4. SAME—*discharge from an asylum is evidence of recovery.* The discharge of a person from an insane asylum may be regarded as evidence of his restoration to sanity.

5. EQUITY—*when court cannot order writ of assistance.* A court of equity may put party in possession of premises where it has given

title to such party by its own decree; but if the decree merely removes a cloud from complainant's existing title upon the ground of fraud, complainant must be left to pursue his remedy at law to obtain possession, and it is error for the decree to provide for a writ of assistance; but this has no application to cases arising under the Burnt Records act.

APPEAL from the Superior Court of Cook county; the Hon. JESSE HOLDOM, Judge, presiding.

This is a bill, filed in the superior court of Cook county on December 14, 1901, by the appellee, Herbert Hammond, against John Clay, Jr., one of the appellants, and his wife, Euphemia F. Clay, William H. Forrest, Frank H. Connor, and his wife, Evelyn B. Connor, Thomas Donohue, and the appellant, John Parry, Parry and Donohue being tenants occupying the premises under John Clay, Jr. The bill alleged that appellee was the owner in fee simple of a certain lot, known as 3946 Lake avenue in Chicago, and acquired title thereto under a warranty deed, dated June 18, 1901, and recorded in the recorder's office of Cook county on June 19, 1901, executed to him by said William H. Forrest; that Forrest acquired title to the lot in 1892, and continued to be the owner thereof until he sold the same to appellee. The bill charges that the power of attorney, and deeds hereinafter mentioned, under which the appellant, Clay, claims to hold the premises in question, were null and void, as having been obtained from Forrest while the latter was insane. The bill prayed that the power of attorney, and deeds hereinafter mentioned, might be decreed to be fraudulent and null and void, and delivered up and canceled, and that appellee might be decreed to be the owner of the premises in question, free from any claim of the defendants below, and entitled to the rents thereof from June 18, 1901, and to be let into possession thereof, and for other relief.

A joint and several answer was filed by the defendants below, admitting the ownership of the premises by

Forrest prior to 1898, but denying that appellee was the owner thereof. The answer set up that, on September 13, 1897, Forrest executed to the appellant, John Clay, Jr., a power of attorney; that acting under this power of attorney, appellant, Clay, executed, on March 18, 1898, a deed of that date of the premises to said Frank H. Connor, which deed was recorded on March 30, 1898; that Connor and wife conveyed said real estate to Clay on April 11, 1898, by deed of that date, which was recorded on June 28, 1898; that Clay was authorized to execute the deed from Forrest to Connor under said power of attorney. The answer denies that Forrest was insane at the time of making said power of attorney, or at the time when said deeds were executed. The answer further alleges that Clay held the premises as security for money due to him from Forrest.

The court entered a final decree granting the relief prayed for in appellee's bill, and finding that the power of attorney, claimed to have been executed by Forrest to Clay on September 13, 1897, and the deed, claimed to have been executed thereunder by Clay to Connor on March 18, 1898, and the deed, claimed to have been executed on April 11, 1898, by Connor and wife to Clay, were all null and void because of the insanity of Forrest when the same were executed; that the premises were in the possession of tenants of Clay; that Forrest was from July, 1897, until after April, 1898, insane and wholly incompetent to transact business; that the deeds from Forrest to Connor, and from Connor to Clay, were executed without any good or valuable consideration, and were merely colorable, and were made solely to enable Clay, as attorney in fact of Forrest, to convey the title to himself, said Clay well knowing that Forrest was insane at the time; that the action of Clay in obtaining, if he did obtain, said power of attorney, and in procuring the execution of said conveyance, was inequitable and unconscionable; that the deed from Forrest to ap-

pellee was for a valuable consideration, being for the sum of $8000.00 paid partly in cash and partly by promissory note of appellee to Forrest; that Clay, on June 20, 1901, when notified of appellee's purchase, set up, as his sole claim of title, that he held the same as security for an indebtedness to him of Forrest of an amount largely in excess of the value of the premises. The decree finds that Clay had no claim whatever to the premises, legally or equitably, and that appellee was the owner thereof in fee simple, free of all claims on the part of defendants below; that Clay had received rents from the premises from June 18, 1901, amounting to $520.47, for which he should account to appellee. The decree thereupon ordered that the deeds from Forrest by Clay, as attorney in fact, to Connor, and from Connor to Clay, were null and void, and should be delivered up to be canceled, and that appellee holds the premises free and clear from any claims of appellants; that Clay should pay to appellee said sum of $520.47 for rents and all costs, and that appellee should have execution therefor; that appellee be forthwith let into possession of the premises; that the possession thereof be forthwith delivered up to appellee by defendants below, and all other persons claiming under them since the commencement of the suit; and that, upon such possession being refused, appellee be awarded a writ of assistance.

The present appeal is prosecuted from the decree so entered by the superior court of Cook county.

SWIFT, CAMPBELL & JONES, for appellants.

HIRAM T. GILBERT, for appellee.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

*First*—It is claimed, on the part of the appellants, that the bill, filed in this case, is a bill to remove a cloud upon title, and that, inasmuch as appellee, the complain-

ant below, was not in possession of the premises when the bill was filed, and the same were not vacant or unoccupied at that time, a court of chancery had no jurisdiction to entertain the bill, and grant relief in accordance with the prayer of the same.

The facts show, that the appellant, Clay, and his tenants, were in possession of the premises when the bill was filed. This court has held in many cases that a party can only file a bill to quiet title, or remove a cloud from the title to real property, where he is in possession of the land, or where he claims to be the owner and the lands in controversy are unimproved and unoccupied. (*Gage* v. *Abbott,* 99 Ill. 366; *Johnson* v. *Huling,* 127 id. 14; *Glos* v. *Randolph,* 133 id. 197; *Glos* v. *O'Toole,* 173 id. 366; *Glos* v. *Goodrich,* 175 id. 20; *Glos* v. *Kemp,* 192 id. 72; *Glos* v. *Beckman,* 183 id. 158).

The rule, however, that, in such case, the complainant must be in possession of the premises, or the premises must be vacant or unoccupied, has no application where the deed, or other instrument, alleged to be a cloud upon the title, is sought to be set aside upon the ground of fraud. Courts of law and courts of equity have concurrent jurisdiction in cases of fraud. In *Kennedy* v. *Northup,* 15 Ill. 148, where the bill was filed for the purpose of setting aside certain deeds held by the defendants, which, as it was alleged, were fraudulently obtained, and which remained as a cloud upon the title of the complainant, the objection was made that the defendants were in possession, and that thereby the plaintiffs were enabled to bring ejectment, and thus contest the fraudulent deeds in a court of law, and that for that reason a court of equity would not assume jurisdiction to try the validity of those deeds and set them aside; but it was there held that, where the complaint is that the title, under which the defendants claim, was obtained by fraud, a court of equity will take jurisdiction. Where the question is simply as to which of the two titles is the better legal title, the

party should bring his action in a court of law, but courts of equity will assume jurisdiction to set aside conveyances fraudulently obtained. In the case of *Kennedy* v. *Northup, supra,* it was said (p. 153): "While a court of equity will not take jurisdiction of every case of fraud which may be presented, yet there are few questions over which its jurisdiction is more universal, and especially so when it relates to the transfer of real estate. * * * Although it may be true that the fraud, if proved, might defeat that title in a court of law, yet the courts of equity have ever claimed to possess superior facilities for investigating such questions, to the courts of law, and certainly the relief which they can give is, in many cases, more satisfactory. When the fraud is once established, they can cut up the fraudulent conveyance or contract by the very roots, and leave the party in as secure a position as if it had never existed."

In *Booth* v. *Wiley,* 102 Ill. 84, the same objection was made as is here insisted upon, and the case of *Kennedy* v. *Northup, supra,* was approved and quoted from; and, in reference to the contention that there are only two cases under our law, in which a party may file a bill to quiet title, or to remove a cloud from the title to real property, first, where he is in possession of the lands, and second, where he claims to be the owner and the lands in controversy are unimproved and unoccupied, it was said (p. 114): "But this is the law where the object is purely to remove a cloud from a title, and does not affect cases where the primary relief is sought upon other and well established equitable grounds, and the removal of the cloud is prayed only as an incident to that relief." It was there held, that the rule in question has no application, where a deed is sought to be set aside upon the ground of fraud.

In the case at bar, the proof is clear, and uncontradicted by the appellants, that William H. Forrest was insane from August, 1897, to the summer of 1898. A phy-

sician, who attended him, testifies to his insanity during
the period in question. The appellant, John Clay, Jr.,
was the brother-in-law of William H. Forrest, and the
physician testifies that he consulted with the appellant,
Clay, in reference to Forrest's insanity, and that appel-
lant concurred with him that Forrest was insane. The
physician, thus testifying, took Forrest to Boston in the
summer of 1897, and left him in an asylum or hospital for
the insane in Massachusetts. Subsequently to his being
taken there, a trial was had finding him to be insane.
The physician, so testifying, and the appellant, Clay,
visited him in Massachusetts at this hospital in March,
1898. He testifies also that, just before starting to Mas-
sachusetts with Forrest, Forrest signed a paper in his
presence at the request of Mr. Clay, which paper was
stated by Clay to be a power of attorney. This evidence
in regard to the insanity of Forrest, when he executed
the power of attorney, stands uncontradicted by any tes-
timony whatever in the record.

Whether a deed thus executed by an insane person is
void, or voidable only, it may be set aside by the insane
person after his restoration to sanity, or it may be set
aside by a vendee, to whom such insane person conveys
the premises, after his restoration to sanity. (*Hanna* v.
*Read*, 102 Ill. 596; *Breckenridge's Heirs* v. *Ormsby*, 1 J. J.
Marshall, 236).

In *Breckenridge's Heirs* v. *Ormsby*, *supra*, the authorities
upon this subject were reviewed, and, after such review,
the court there say: "And these authorities also show,
that a purchaser or devisee, holding his right from the
infant or *non compos*, derived after the attainment of legal
discretion, or restoration to sanity, may avoid a deed
made for the same estate during disability." In the lat-
ter case, it was said that the deed, so made by an insane
person after his restoration to sanity, conveys to the
grantee all the right which the vendor has, and, as the
vendor had the right to avoid the deed made during his

insanity, the vendee, by virtue of the deed to him, acquires the same right.

Every person is deemed guilty of meditated fraud when he deals with an insane person with knowledge of such insanity. (*Kilbee* v. *Myrick*, 12 Fla. 431). In the case at bar, the appellant, Clay, being the brother-in-law of Forrest, induced him to execute a power of attorney, knowing at the time that Forrest was insane. Under the power of attorney thus obtained, and while Forrest was in an insane asylum in Massachusetts, Clay, in the name of Forrest, executed a deed of the premises in question to Connor, a clerk in his employ, and then, a few days after, Connor and his wife re-conveyed the premises to Clay. No evidence is produced by the appellant to contradict any of the facts thus established, and they constitute such fraud, as, in our opinion, justifies a court of equity to take jurisdiction for the purpose of setting aside the instruments thus obtained.

*Second*—It is contended, however, on the part of the appellants that, while the proof may show that Forrest was insane when he executed the power of attorney in question, his insanity will be presumed to have continued until his restoration is established by proof. The point, made by appellants, is that the court below did not find that Forrest was restored to sanity when he executed the deed to appellee on June 18, 1901, and, therefore, the presumption is that his insanity continued up to that time, and, so, it is insisted by the appellants that, if the deed to the appellant, Clay, was invalid by reason of the insanity of Forrest, the deed to the appellee was invalid for the same reason.

The answer to this contention on the part of the appellants is, that the proof does show a restoration of Forrest to sanity when he executed the deed to appellee. Forrest was discharged from the institution, to which he was committed in Massachusetts, in the summer of 1898. In *Langdon* v. *People*, 133 Ill. 382, we said: "The discharge

of a patient from a lunatic asylum may be regarded as evidence of his recovery." (See, also, *State* v. *Davis*, 27 S. C. 609). In addition to the fact of the discharge, the proof shows that, after Forrest returned from Massachusetts to Chicago in the summer of 1898, he went to Iowa to the home of his parents where he remained until some time in the summer of 1899, when he removed to Dixon, Illinois, and then returned to Chicago in March, 1901; that, at the latter date, the appellant, Clay, commenced a suit against him for an accounting and settlement of the partnership affairs of Clay and Forrest, who had theretofore been partners. In this suit, he was served with summons issued by the appellant, Clay, employed a lawyer, and attended the hearings before the master. By commencing this suit, appellant, Clay, concedes the restoration of Forrest to sanity. It is not shown that any conservator was appointed for Forrest in the suit, but he was treated therein as a person fully possessed of his reasoning faculties. Moreover, in his answer in the present case, the appellant, Clay, insists that, after Forrest returned from Massachusetts, he affirmed or ratified the power of attorney which he executed during his insanity. No proof was introduced to establish any such ratification, but the fact, that it was set up in the answer, is a concession on the part of the appellant, Clay, that Forrest was restored to sanity. Otherwise, he was unable to ratify an act done during his insanity. Sufficient evidence was introduced by the appellee to establish the restoration of Forrest to sanity, so long as such evidence remained uncontradicted, and the defendants below introduced no evidence whatever to overcome or rebut the *prima facie* case made by the appellee as to Forrest's restoration to sanity.

*Third*—It is furthermore contended by the appellants that Clay claimed to hold the title under the deed executed by Connor to himself, not as an absolute conveyance, but as a security for an alleged indebtedness from

Forrest to him, and that, therefore, Clay was a mortgagee in possession. Counsel for appellants then claim that a mortgagor cannot file a bill against a mortgagee without offering to redeem from the mortgage, and that, as appellee did not offer to redeem from the mortgage, the court should have dismissed the bill. The bill, filed in this case, is in no sense a bill to redeem from a mortgage. The position, taken by the appellee, is that, while the appellant claimed to hold the title conveyed to him for a debt, as a matter of fact no debt existed. The testimony, introduced by the defendants below themselves, tends to show that the conveyance to appellant, Clay, was not made to secure a *bona fide* indebtedness. The evidence, tending to show that no such indebtedness existed, was not contradicted by any proof on the part of the appellants. In other words, appellants introduced no testimony whatever showing that any indebtedness existed from Forrest to Clay, and did not rebut the case made by the evidence in the record as to the non-existence of any such indebtedness.

*Fourth*—Much is said in the argument of counsel for the appellants to the effect that the appellee paid no valid consideration for the conveyance, executed to him by Forrest in June, 1901, and that, if the consideration, claimed to have been paid by the appellee, was actually paid, it was less than half the real value of the property. Forrest testifies in the case, and shows that he knew the value of the property. He was not imposed upon by any fraudulent representations made by the appellee. The title to the property was clouded by the existing conveyance to Clay, and by the pendency of the suit for an accounting, which Clay had brought against Forrest. These matters rendered it impossible for Forrest to sell the property for the full value. The proof shows that all these matters were well understood both by Forrest and by the appellee. Appellee paid Forrest $8000.00 for the premises in question. He paid $4000.00 in cash, and

executed his note for the remaining $4000.00. The proof tends to show that the sale to appellee was *bona fide*, and was for such consideration as Forrest was willing to receive. When Forrest made the sale to appellee, he acted under the advice of legal counsel, capable of protecting his interests. He says in his testimony: "At the last interview I sold the property to Mr. Hammond for $8000.00. * * * The money was paid to me in good faith." There is no controversy here between appellee and Forrest as to the validity and good faith of the transfer to appellee. What the amount of the consideration was, received by Forrest from appellee, is not a matter which concerns the appellant, Clay.

*Fifth*—There is, however, one feature of the decree, entered by the court below, which we cannot but regard as erroneous. We are of the opinion that the court below decided correctly in holding that the power of attorney, and the deeds, executed under it to Connor and by Connor to Clay, were null and void, and in decreeing that the instruments in question should be delivered up to be canceled. But that part of the decree, which provides that appellee should be let into possession of the premises, and that a writ of assistance should be awarded to him for the purpose of thus putting him into possession of the premises, was not warranted by the facts of the case. Where land is sold under a decree foreclosing a mortgage, a writ of assistance will be issued to put the purchaser at the mortgage sale in possession of the premises. (*Aldrich* v. *Sharp*, 3 Scam. 261; *Bennett* v. *Matson*, 41 Ill. 332; *Kessinger* v. *Whittaker*, 82 id. 22; *O'Brian* v. *Fry*, 82 id. 87). In such case, however, the purchaser at the foreclosure sale, whether he be the complainant in the foreclosure suit, or a third person, obtains his title from the decree of the court of chancery. A court of chancery will put a party in possession of premises, when it has, by its own decree, given the title to those premises to such party. Here, however, appellee does not come into

a court of chancery for the purpose of obtaining a title. He claims by his bill to have the title .already through a warranty deed executed to him by Forrest on June 18, 1901, and he merely asks that a fraudulent deed to the premises, held by another party, be removed and canceled as a cloud upon a title already existing. In such case, a court of chancery will leave the party, in whose favor it removes the cloud, to pursue his remedy at law in order to get possession of the premises.

In *Schenck* v. *Conover*, 13 N. J. Eq. 223, the cases upon this subject are reviewed by the chancellor, and it is there said: "These cases clearly show the long established and familiar practice of the court of chancery, wherever the conveyance of real estate is decreed, to compel the defendant to surrender the possession to the plaintiff." In *Schenck* v. *Conover*, *supra*, it was said that, on a bill by a mortgagor to redeem the mortgaged premises, the court will order the defendant to deliver up possession to the complainant without putting him to his ejectment, but that, in a strict foreclosure, the practice is otherwise, and that, in the latter case, the court does not direct the mortgagor to deliver up the possession of the mortgaged premises to the complainant, but leaves the latter to his ejectment; and the reason there given for this conclusion is that, on a bill to redeem, the mortgagor acquires title under the decree of the court, and the court will perfect his title, and give him the benefit of the decree, by putting him in possession; whereas, under a bill for strict foreclosure, the complainant has the legal title already, and only asks that the equity of redemption be foreclosed, not acquiring any title under the decree of the court, and no conveyance being ordered. The reasoning of the New Jersey case applies to the facts of the case at bar. We have held that, where a bill is filed to quiet the title of a complainant, the court should stop with the decree, so quieting the title, "without decreeing a re-conveyance to the complainant." (*Rucker* v.

*Dooley,* 49 Ill. 378; *Pratt* v. *Kendig,* 128 id. 293). Inasmuch, therefore, as, in the case at bar, the defendants are not and could not be required by the decree to make a conveyance to complainant, the decree should not have gone so far as to award to the complainant a writ of assistance to compel the defendants to surrender the possession. As was said by the court of chancery in *Schenck* v. *Conover, supra,* the practice of a court of chancery is to compel the defendant to surrender the possession to the complainant in cases where the conveyance of real estate is decreed. As the decisions of this court hold that, on a bill to remove a cloud from the title to real estate, it is improper to require the defendants to execute to the complainant a deed of the real estate, it would seem to follow that it is improper to require the defendant to surrender the possession to the complainant in a suit begun by the filing of such a bill. The observations here made are not intended to apply to cases arising under the Burnt Records act of this State, by the terms of which a peculiar and enlarged jurisdiction is conferred upon courts of equity in the matter of establishing titles thereunder. (*Harding* v. *Fuller,* 141 Ill. 308).

Accordingly, the decree, rendered by the superior court of Cook county, is affirmed in all respects, except so far as it requires that the possession of the premises be forthwith delivered up to appellee by the appellants, and all other persons claiming under them since the commencement of the suit, and that, upon such possession being refused, the appellee be awarded a writ of assistance, the decree being reversed as to the portion thereof embraced within the exception thus indicated, the costs of this court to be paid one-half by each party.

*Partly affirmed and partly reversed.*