NORTHWESTERN MUTUAL LIFE-INSURANCE CO. *v.* AMOS.

EQUITY   JURISDICTION — INSURANCE   POLICY — CANCELLATION —
FRAUD.

> A bill to compel the surrender of a life-insurance policy for
> cancellation, alleging that the policy was never delivered,
> but was handed to the insured for a temporary purpose, and
> was found among his papers at his death; that the premium
> was never paid nor credit extended; that defendant, the
> beneficiary, after the death of the insured, induced an inter-
> nal revenue officer to affix and cancel the necessary stamps
> without any showing authorizing him so to do; and that the
> possession and attempted enforcement of the policy are a
> fraud upon complainant,—contains no specific allegations of
> fraud, and does not state a case for equitable cognizance.
> *John Hancock Mut. Life-Ins. Co.* v. *Dick*, 114 Mich. 337, dis-
> tinguished. HOOKER, J., dissenting.

Appeal from Wayne; Brooke, J.   Submitted Novem-
ber 17, 1903.   (Docket No. 122.)   Decided March 29,
1904.

Bill by the Northwestern Mutual Life-Insurance Com-
pany against Lavern Amos for the surrender and cancel-
lation of certain policies of insurance.   From a decree dis-
missing the bill on demurrer, complainant appeals.   Af-
firmed.

Complainant has appealed from a decree sustaining the
demurrer to complainant's bill in equity.   The bill alleges
complainant's due incorporation; that on December 30,
1899, one Walter G. Amos, husband of the defendant,
applied to the company for a policy of insurance for
$2,000, the annual premium being $62.66; that on the
same day he applied for another policy of $3,000, the annual
premium to be $93.99; that his wife, the defendant, was
the beneficiary named in said policies; that the complain-
ant prepared the policies at its home office in Milwaukee,

placed the requisite internal revenue stamps in small envelopes, to be attached to said policies and canceled when the policies were delivered; that said stamps were not attached and canceled, because the premiums had not been paid, and the policies were not valid until paid; that each policy contained the following provision: "This policy shall not take effect until the first premium shall have been actually paid while the insured is in good health;" that said policies, with the revenue stamps in the small envelopes pinned to them, were sent by mail to its general agent at Chicago; that said general agent delivered them to one Ellis, who had taken the applications, and who was a subagent of one Cole, who was soliciting insurance for the complainant.

That said Walter G. Amos was employed as the Western agent of the Murphy Iron Works of Detroit, had an office in Chicago, was receiving a salary of $1,200 per year, and resided with his family at Morgan Park, Chicago; that his office was in the Bedford building, on Dearborn street, about the business center of the city; that Amos made applications for two policies, because he was uncertain whether he should be able to pay the premiums upon the $2,000 or the $3,000 policy; that his income was not sufficient to enable him to carry either of said policies and defray his other expenses, but that he expected his salary to be raised, or to secure other employment.

That said policies were handed to said Amos for inspection only, and were left with him to examine their terms; that he did so, and afterwards returned them to Ellis; that afterwards an agent of another company solicited Amos for insurance; that Amos again desired to inspect the policies, and obtained them from Ellis for that purpose, the internal revenue stamps being still in the envelopes and pinned to the policies; that said Ellis and Cole from time to time requested said Amos to accept the policies and pay the premiums; that Amos never did so, and never decided to accept the policies, never paid the premiums or any part thereof, and received no credit or extension of time, but

kept said policies for the sole purpose of inspection; that he kept the policies in a desk in his office in the city, to which desk others had access.

That on March 21, 1900, said Amos was killed; that these policies were then found in the office of the Murphy Iron Works, in Chicago, and came into the possession of the defendant; that on December 26, 1900, one of defendant's attorneys presented said policies to the collector of internal revenue at Detroit, with the stamps still unattached, and induced said collector to attach and cancel them, and indorse thereon the following certificate:

"I certify that the revenue stamps upon this policy were taken from the attached envelope and affixed and canceled by me, under the provisions of section 13 of the war revenue act of 1898, upon request of Lavern Amos, made December 26, 1900."

The bill then further alleges that the stamps were not omitted from said policies by mistake or inadvertence; that no showing of such fact was made to the collector, and that the collector's act was without authority; that on January 9, 1901, defendant commenced a suit at law on said policies in the circuit court for the county of Wayne; that said suit was duly transferred to the circuit court of the United States for the Eastern district of Michigan, Southern division, January 28th; that testimony was taken and the case ready for trial, when defendant, plaintiff in that suit, submitted to a nonsuit, with leave to move to set it aside within 20 days; that no motion was made to set the same aside, and on December 31, 1902, she commenced suit in the Wayne circuit court upon the $2,000 policy, which suit is still pending. The bill then avers that said policy was never delivered; that the premium was never paid; that no credit was ever given; and that the possession and attempted enforcement of said policy by said defendant is a fraud upon the complainant's rights. The prayer of the bill is that said policies be surrendered and canceled.

*Thomas A. E. Weadock,* for complainant.

*John W. McGrath,* for defendant.

GRANT, J. (*after stating the facts*). The chief grounds for the demurrer are (1) that the bill shows that the complainant has a complete and adequate remedy at law; (2) that it does not allege that either Walter G. Amos or the defendant was guilty of any fraud respecting the procurement or possession of said policies.

Certainly no fraud is charged upon Mr. Amos. Neither is any fraud charged upon Mrs. Amos in obtaining possession of them. They were found among his papers in the safe of his employer, but over which he had entire control. She certainly had the right to assume that they were valid, and there is no allegation of any knowledge on her part that they are not valid. It is difficult to see how, under these circumstances, any fraud could be alleged or proved.

The complainant in its bill seems to recognize that, up to the time of the receipt of these policies by the defendant, it can neither charge nor prove any fraud. It rests upon the allegation "that the possession and attempted enforcement thereof are a fraud upon the complainant's rights." So the attempted enforcement of any claim not founded upon legal right is a fraud upon the other's rights, but courts of law are the proper forum in which to determine the legality of the claim. The allegation is based upon the preceding statement of facts, which in themselves do not show fraud.

Under the facts set up in the bill, the policies were never delivered, and were therefore never in force. Counsel relies upon *John Hancock Mut. Life-Ins. Co.* v. *Dick*, 114 Mich. 337 (72 N. W. 179, 43 L. R. A. 566), *Mactavish* v. *Kent Circuit Judge*, 122 Mich. 242 (80 N. W. 1086), and *Edwards* v. *Michigan Tontine Investment Co.*, 132 Mich. 1 (92 N. W. 491). Those cases have no application here. The basis of the equity jurisdiction there sustained was fraud,—active fraud in the procurement of

the policies, or the renewals thereof after they had lapsed. The sole question in this case is one of fact, viz., Were the policies delivered and the premiums paid, or their payment waived? The doctrine in the *Dick Case* will not be extended to include cases of this character, where the questions involved are purely legal, no fraud is charged, and there is no possible reason for the interposition of a court of equity. See *Mack* v. *Village of Frankfort*, 123 Mich. 421 (82 N. W. 209).

The decree is affirmed, with costs.

MOORE, C. J., CARPENTER and MONTGOMERY, JJ., concurred with GRANT, J.

HOOKER, J. (*dissenting*). The bill of complaint in this cause shows that the policy of insurance of which cancellation is sought came into the possession of the defendant, and was sued upon under circumstances which made such suit and a claim of liability fraudulent. The suit was afterwards removed to the federal court, and, after taking proofs, the plaintiff submitted to a voluntary nonsuit. Subsequently a second suit was begun in the Wayne circuit court. If the bill states the truth, a paper invalid for want of delivery, and not a perfect instrument for want of revenue stamps, was, without right, given the appearance of a contract binding upon the complainant by procuring the revenue stamps to be affixed by a federal official. Had the defendant done this with knowledge of the facts, no one would doubt that it was a fraudulent act. We do not know that it was not so done. It is none the less fraudulent in law if she did it in good faith. The jurisdiction of a court of equity to cancel the policy under the circumstances is, in my opinion, as clear as in the other. The cancellation of instruments is not limited to cases of actual fraud, if it is limited to cases of fraud, which I am not prepared to hold.

But the bill charges actual fraud. As said in complainant's reply brief:

"Complainant's bill is not filed against the deceased, nor against his estate. We do not claim, nor is it necessary for us to claim, that the deceased, Mr. Amos, was guilty of any fraud. We do not think he was. It is the defendant in this case who is guilty of an act of fraud in asserting title to an insurance policy which she must necessarily know was not a valid one, which was never delivered to her, upon which she knew, before she commenced her last case, that the premiums had never been paid, and the policy had never been delivered. It is as much an actual fraud on her part to claim this policy, to ·have it surreptitiously and improperly stamped, to bring suit upon it, as if she had casually found the policy in the office of the company at Milwaukee, which had not been paid for nor delivered, and she had asserted title to it. That is the act of fraud, and fraud is a conclusion of law in this case, of which the defendant in this case was guilty."

This question must turn on the sufficiency of the bill, arising, as it does, upon demurrer. The bill shows that the policy never was delivered, and that no premium was paid, that it was procured by the deceased for the purpose of examination merely, and that he had no authority to affix the revenue stamps, and claim it to be a valid policy, without accepting it and paying the premium. For him to have affixed the stamp under other circumstances, and then claimed it to be a valid contract, would have been a fraud, and clearly within the jurisdiction of chancery relief, under its jurisdiction relating to cancellation. This he never did. The bill shows that this policy was presented to the collector of internal revenue, who affixed and canceled the stamps, under section 13 of the revenue act of 1898 (Act June 13, 1898, chap. 448, 30 Stat. 454, 2 Supp. Rev. Stat. p. 786 [U. S. Comp. Stat. 1901, p. 2296]), thereby giving the instrument the appearance of a valid contract, which in fact it was not. This could be lawfully done upon a showing that the omission to stamp was by reason of accident, mistake, inadvertence, or urgent necessity, which could not have been the fact if the allegations of the bill are true. Not only was the contract in-

valid for want of delivery, but it would have been invalid under the act cited (section 13) had it been delivered without stamping, and it was a fraud upon the complainant to procure such cancellation, and to give it the appearance of a contract, when it was one never made. Under such allegations chancery has jurisdiction, and it does not depend upon what the proofs may show. The bill states a case of fraud, and jurisdiction must depend upon that. This question arises upon demurrer, whereby the allegations of the bill are admitted. *Edwards* v. *Michigan Tontine Investment Co.*, 132 Mich. 1 (92 N. W. 491). It is possible that a hearing upon the merits may show these allegations to be unsupported by the evidence, as was the final result in *John Hancock Mut. Life-Ins. Co.* v. *Dick*, 114 Mich. 337 (72 N. W. 179, 43 L. R. A. 566).[1]

If there is jurisdiction in equity on the ground of cancellation, it is not limited to cases where a defense might not be made in a court of law. The case is substantially on all fours with the case of *John Hancock Mut. Life-Ins. Co.* v. *Dick, supra.* In England the authorities are uniform that, in cases of fraud, the jurisdiction of equity is not dependent upon the want or inadequacy of a legal remedy. *London, etc., Ins. Co.* v. *Seymour*, L. R. 17 Eq. Cas. 85; *Hoare* v. *Bremridge*, L. R. 14 Eq. Cas. 522; *Bartlett* v. *Salmon*, 6 De Gex, M. & G. 33; *Jennings* v. *Broughton*, 5 De Gex, M. & G. 126. In Massachusetts the courts have adopted the English rule, in consequence of a change whereby the statute has conferred full equity jurisdiction, under which its courts previously held otherwise. *Holden* v. *Hoyt*, 134 Mass. 181; *Billings* v. *Mann*, 156 Mass. 203 (30 N. E. 1136); *Nathan* v. *Nathan*, 166 Mass. 294 (44 N. E. 221); *Stratton* v. *Hernon*, 154 Mass. 310 (28 N. E. 269); *Hurd* v. *Turner*, 156 Mass. 205, note (30 N. E. 1137); *Emerson* v. *Atkinson*, 159 Mass. 361 (34 N. E. 516). The following cases, among others, sustain the jurisdiction in this country: *Domingo* v. *Getman*, 9 Cal. 97; *Buxton* v. *Broadway*, 45 Conn. 540;

---

[1] See 117 Mich. 518 (76 N. W. 9).

*Ferguson* v. *Fisk*, 28 Conn. 501; *Porter* v. *Jones*, 6 Cold. 313; *Town of Glastenbury* v. *McDonald's Adm'r*, 44 Vt. 450.

The remedy is a concurrent one, and to hold that it depends upon the inadequacy of the legal remedy is to abridge the equity jurisdiction, which our Constitution and laws guarantee as unqualifiedly and effectively as they do legal remedies and the right to trial by jury, as we held in *John Hancock Mut. Life-Ins. Co.* v. *Dick*, *supra*. The court should as carefully guard and protect this jurisdiction as any other. *Edsell* v. *Briggs*, 20 Mich. 433; *Edwards* v. *Michigan Tontine Investment Co.*, 132 Mich. 1 (92 N. W. 491), and cases cited; *Brown* v. *Kalamazoo Circuit Judge*, 75 Mich. 274 (42 N. W. 827, 5 L. R. A. 226, 13 Am. St. Rep. 438). See, also, the following cases: *Wheeler* v. *Bank*, Har. Ch. 449, 456; *Wales* v. *Newbould*, 9 Mich. 45; *Wright* v. *Hake*, 38 Mich. 525; *Wyckoff* v. *Sewing-Machine Co.*, 43 Mich. 309, 312 (5 N. W. 405); *Tompkins* v. *Hollister*, 60 Mich. 470 (27 N. W. 651); *U. S. Life-Ins. Co.* v. *Cable*, 98 Fed. 761, 39 C. C. A. 264. In *Tompkins* v. *Hollister*, Morse, J., said:

"And it makes no difference that she [the complainant] may have an adequate remedy at law. Equity has concurrent jurisdiction in cases of fraud, and she can enforce her rights in this suit. Adams, Eq. 176; Willard, Eq. Jur. 145."

In *Brown* v. *Kalamazoo Circuit Judge*, *supra*, Campbell, J., said:

"The right to have equity controversies dealt with by equitable methods is as sacred as the right of trial by jury."

And again:

"The cognizance of equitable questions belongs to the judiciary as a part of the judicial power, *and, under our Constitution, must remain vested where it always has been vested heretofore.*"

*Sherman* v. *Stove Co.*, 85 Mich. 169, 176 (48 N. W.

537); *Chicago, etc., R. Co.* v. *Miller*, 91 Mich. 166 (51 N. W. 981); *Warren* v. *Holbrook*, 95 Mich. 185 (54 N. W. 712, 35 Am. St. Rep. 554); *Cogswell* v. *Mitts*, 90 Mich. 353 (51 N. W. 514); *Fitzmaurice* v. *Mosier*, 116 Ind. 363 (16 N. E. 175, 19 N. E. 180, 9 Am. St. Rep. 854); *Fuller* v. *Percival*, 126 Mass. 381; *Hardy* v. *Brier*, 91 Ind. 91; *Huston* v. *Schindler*, 46 Ind. 38; *Huston* v. *Roosa*, 43 Ind. 517; *Garrett* v. *Railroad Co.*, Freem. Ch. (Miss.) 70; *Merritt* v. *Ehrman*, 116 Ala. 278 (22 South. 514); *Glass* v. *Haygood*, 133 Ala. 489 (31 South. 973); *Bishop* v. *Thompson*, 196 Ill. 206 (63 N. E. 684); *Clay* v. *Hammond*, 199 Ill. 370 (65 N. E. 352, 93 Am. St. Rep. 146).

The decree should be reversed, with leave to defendant to answer within 30 days after the entry of this order.